NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

*In re the Matter of:*

LEILANI WARD, *Petitioner/Appellee,*

*v.*

JUSTIN SMITH, *Respondent/Appellant.*

No. 1 CA-CV 20-0008 FC

FILED 03-09-2021

Appeal from the Superior Court in Maricopa County
No.  FC2018-093823
The Honorable Andrew J. Russell, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Moon Law Firm PLC, Mesa
By Robert J. Moon
*Co-Counsel for Petitioner/Appellee*

Al Arpad Esq., Phoenix
By Alexander R. Arpad
*Co-Counsel for Petitioner/Appellee*

Hayes Esquire PLLC, Phoenix
By Cody L. Hayes
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**F U R U Y A**, Judge:

¶1         Justin Smith ("Father") appeals provisions of the decree dissolving his marriage to Leilani Ward ("Mother") regarding legal decision-making authority, parenting time, property division, and attorneys' fees. Because the superior court reviewed the evidence presented, made all necessary findings, and did not err in deciding any of the issues Father assigns as error, we affirm the decree.

### FACTS AND PROCEDURAL HISTORY

¶2         The parties were married in 2008 and have one minor child. Mother filed a petition to dissolve the marriage in 2018. The parties participated in a settlement conference in March of 2019 that resolved some, but less than all, issues. The remaining issues were resolved following a September 2019 trial, and the court entered the decree of dissolution in November of 2019.

¶3         Father timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1) and -2101(A)(1).

### DISCUSSION

### I.     Legal Decision-Making Authority and Parenting Time

¶4         Father argues that the superior court erred by not awarding him final decision-making authority as to the child and by ordering less than equal parenting time.

¶5         We review the superior court's legal decision-making and parenting time orders for abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). The court abuses its discretion when it "commits an error of law" in reaching a discretionary decision or "when the record is devoid of competent evidence to support the court's decision." *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 5 (App. 2019) (internal citations omitted). Further, the superior court must "determine legal decision-making and

parenting time . . . in accordance with the best interests of the child." A.R.S. § 25-403(A). In doing so, the court must consider the non-exhaustive list of factors enumerated in A.R.S. § 25-403(A)(1)–(11) "that are relevant to the child's physical and emotional well-being." We will not disturb the court's factual findings unless they are clearly erroneous. *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 6 (App. 2010). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Kocher v. Dep't of Revenue of State of Ariz.*, 206 Ariz. 480, 482, ¶ 9 (App. 2003). And we view the evidence in the light most favorable to sustaining the decree. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283, ¶ 14 (App. 2019).

### A. Arizona Rule of Family Law Procedure ("ARFLP") 69 Arguments

**¶6** Father argues that reversal is required on multiple issues because of alleged inconsistency with the parties' agreements reached during a settlement conference, citing ARFLP 69. But the record reflects that the parties had not agreed on the specific issues Father challenges on appeal, and that the superior court properly addressed those unresolved issues during and after trial. *See* ARFLP 69(b) ("An agreement under [ARFLP 69] is not binding on the court until it is submitted to and approved by the court as provided by law."). Therefore, Father has not established error in this regard.

### B. Joint Legal Decision-Making Authority

**¶7** The parties agreed to joint legal decision-making, which the superior court ordered. Relying on *Nicaise v. Sundaram*, 245 Ariz. 566 (2019), Father assigns error to the court in not granting him "final" legal decision-making authority, or alternatively, in not ordering the parties to make use of co-parenting counseling or similar assistance to resolve legal decision-making issues between them. *Nicaise* provides that vesting final authority in one parent may be appropriate in instances where "the parents cannot reach a joint agreement in good faith" and such a grant does not constitute "sole legal decision-making." *Nicaise*, 245 Ariz. at 569, ¶ 14. As such, it describes an additional tool available to the court in resolving issues that concern legal decision-making. It does not, as Father suggests, require that courts grant final authority to one parent. Thus, *Nicaise* is inapposite.

**¶8** Here, the superior court had before it all trial evidence and arguments presented in analyzing the child's best interests and expressly examined the relevant factors enumerated in A.R.S. § 25-403(A)(1)–(11) and A.R.S. § 25-403.01(B). Having done so, the court rejected Father's request

for "final say." The court explained that it was concerned that Father's insistence on having the final say "stem[med] more from his desire to be in control than from any issues related to the child's best interests." The court further observed that joint legal decision-making was reasonable, given that the parties had made "legal decisions together" during their marriage and found no evidence that they would be unable "to continue making appropriate legal decisions together" moving forward.

¶9 The record contains adequate support for the superior court's decision in this regard. For example, Mother testified that granting Father final authority would not be in their "son's best interest" because she feared Father would use it "as a tool [for] control and manipulation."

¶10 Although Father may not agree with the superior court's decision or the weight the court assigned to certain evidence in arriving at certain conclusions, we will not reweigh evidence on appeal. *See Lehn*, 246 Ariz. at 284, ¶ 20. Father has shown no error in the joint legal decision-making determination in the decree.

### C. Parenting Time

¶11 Father next argues that the regular weekly parenting time plan violates the parties' agreement to share parenting time equally. More specifically, Father argues that the superior court's decree fails to expressly set a custody exchange time during midweek and further errs by requiring the parties to exchange custody of the child at noon on Sundays, including on Sundays that are also holidays.

¶12 Preliminarily, the record reflects that midweek custody exchanges occurred with regularity. Further, the subject of midweek exchange time was neither disclosed as a subject of dispute in Father's pretrial statement, nor was it raised at trial. Parties waive the right to raise an objection if the specific objection is not raised in their pretrial statements. *See* ARFLP 76.1(f)(5)–(7), (h). Further, we generally do not address arguments raised for the first time on appeal. *Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 109, ¶ 17 (App. 2007). Therefore, Father has waived this argument.

¶13 As to Father's other challenge of the decree's fixed Sunday exchange of custody provision, his arguments in that regard are also unpersuasive.

¶14 Presumptively, it is in a child's best interests to have "substantial, frequent, meaningful and continuing parenting time with

both parents." A.R.S. § 25-103(B)(1); *see also* A.R.S. §§ 25-403.02(B) ("Consistent with the child's best interests . . . the court shall adopt a parenting plan that provides for both parents . . . that maximizes their respective parenting time."), and -411(J) ("[T]he court shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger seriously the child's physical, mental, moral or emotional health."). However, none of these statutes guarantee that any parent will have exactly equal parenting time, even in the absence of evidence of "parental unfitness or endangerment." *See Gonzalez-Gunter v. Gunter*, 249 Ariz. 489, 492, ¶¶ 11–12 (App. 2020). Thus, although equal parenting time is presumed to be in a child's best interests, the superior court has both the authority and the duty to evaluate all evidence before adopting an appropriate parenting time plan, which need not be exactly equal. *Id.*

¶15        At trial, Father asked the superior court to order the parents to exchange the child pursuant to a variety of different options. As an example, Father proposed that an exchange occur on alternating Saturday and Sunday evenings. Under this proposed plan, Mother would have had the child 182 hours over a two-week period, and Father 154 hours. Under the plan the court ultimately adopted in its decree, Mother will have 188 hours of parenting time every two weeks, and Father 148 hours. Other options proposed by Father presented similar calculations, with correspondingly small deviations when compared to the division of time called for in the decree. Even if Father could demonstrate that the modest differences were material, on the record presented (including evidence of complications introduced by Mother's schedule), he has not shown the court abused its discretion by ordering a consistent Sunday transfer.

¶16        Father also argues that the superior court abused its discretion by ordering that Sunday holidays be treated like any other Sunday. Again, Father fails to show error in the court's findings and conclusions regarding the parenting time plan it adopted. *See Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015) ("[T]he family court is in the best position to judge the credibility of witnesses and resolve conflicting evidence, and appellate courts generally defer to the findings of the family court."). On this record, Father has not shown the court erred in addressing parenting time.

## II.    Property Division

¶17        Father further argues the superior court erred in its division and assignment of certain property interests as between the parties.

¶18        A superior court's division of marital property in a dissolution proceeding "shall assign each spouse's sole and separate property to such spouse" and "shall also divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind[.]" A.R.S. § 25-318(A). Aside from property acquired by gift, devise, or descent, or after service of a petition for dissolution of marriage, all property acquired during marriage is presumed to be community. *See* A.R.S. § 25-211(A)(1)–(2). Likewise, debt incurred by either spouse during marriage is presumed a community obligation. *See In re Marriage of Flower*, 223 Ariz. 531, 537, ¶ 24 (App. 2010). We review the court's division of property for an abuse of discretion but review the court's characterization of property *de novo*. *Helland v. Helland*, 236 Ariz. 197, 199, ¶ 8 (App. 2014).

### A.        Home Equity Line of Credit ("HELOC") Debt

¶19        Mother came into the marriage owning a home on Flower Street, which she rented out. The home was subject to a HELOC. During the marriage, the balance of the loan increased by somewhat more than $16,500. The superior court ruled that the debt increase was a community obligation because Father offered "insufficient evidence . . . to show otherwise." On appeal, Father argues the debt increase should have been allocated solely to Mother.

¶20        "[D]ebts incurred during marriage are presumed to be community debts, and the party who contends otherwise has the burden of overcoming the presumption by clear and convincing proof." *Lorenz-Auxier Fin. Grp., Inc. v. Bidewell*, 160 Ariz. 218, 220 (App. 1989). "This presumption applies to debt secured by separate property" if that debt is incurred for the benefit of the community. *See Hammett v. Hammett*, 247 Ariz. 556, 562, ¶ 29 (App. 2019) (citing *Johnson v. Johnson*, 131 Ariz. 38, 45 (1981) ("[W]e [do not] see any reason why the [community obligation] presumption should be negated by the fact that the husband used his separate property to secure the community loans."); *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 198 (App. 1990). Father questions the legitimacy of the loan statements Mother provided to Father "for the home equity account from September 2010 through March of 2019." However, Father apparently did not subpoena relevant documents and the record does not show he made other efforts to introduce evidence to carry his burden to meet the applicable clear and convincing standard. *See Lorenz-Auxier*, 160 Ariz. at 220. Having found that Father failed to meet his burden of proof, the superior court did not abuse its discretion in characterizing the HELOC debt as a community obligation.

### B.     Amount of the Community Lien

**¶21**          Father next argues the superior court erred in calculating the value of the community lien against the Flower Street home. Specifically, Father contends the community lien calculation did not account for the community's purchase of a $4,987 air conditioning unit for that home in 2012.

**¶22**          When community funds are used to make capital contributions toward a separate asset, the community's interests "in the separate asset [] may be vindicated through an equitable lien." *Femiano v. Maust*, 248 Ariz. 613, 617, ¶ 17 (App. 2020). Such a community lien "should account for any increase in equity created by . . . capital improvements." *Id.* at ¶ 18. "[W]hen community funds are used to *improve* separate property, a value-at-dissolution formula which takes into account the enhanced value of the property should be utilized rather than an amount-spent formula . . . [.]" *Drahos v. Rens*, 149 Ariz. 248, 250 (App. 1985).

**¶23**          In this case, the superior court did not find Father's evidence sufficient to support his arguments. This finding is supported by the record, particularly given that Father did not establish the extent to which the 2012 air conditioning unit increased the value of the home at dissolution in November of 2019. Therefore, Father has shown no abuse of discretion as to this issue.

### C.     Reimbursements

**¶24**          Father also contends that the superior court abused its discretion by not awarding the community reimbursement for rental income purportedly owed by Mother's mother ("Grandmother"), who was living in the guest house of the parties' marital residence.

**¶25**          Father testified there was an agreement for Grandmother to pay rent for the guest house and introduced an email he sent to Mother mentioning this rent as a "line item." After considering the email and Father's testimony, the superior court found Father's contention "too speculative given the evidence presented, and therefore denie[d] Father's request." Father has not shown that the court failed to consider evidence or otherwise abused its discretion by rejecting Father's claim.

**¶26**          Citing *Bobrow v. Bobrow*, 241 Ariz. 592 (App. 2017), Father additionally argues that he was entitled to reimbursement for "a vehicle loan payment he made on Mother's behalf and . . . expenses [he] paid in connection with the sale of the marital residence"—which expenses

allegedly total $1,200. But Father does not provide record citations or cite to evidence showing expenses that were required to be reimbursed. Further, it does not appear Father raised a *Bobrow* argument before the superior court, and it will not be addressed for the first time on appeal. *See ABC Supply, Inc. v. Edwards*, 191 Ariz. 48, 50 (App. 1996) ("Only the theories expressly raised at trial are properly preserved for appeal.") (internal quotation omitted). Accordingly, this claim fails.

**¶27** Father also argues the superior court erred by failing to award him reimbursement for increased taxes he paid due to Mother filing her 2017 and 2018 taxes as married, filing separate, rather than jointly. However, he did not offer any authorities or evidence of record to support this contention, and therefore, we deem it waived. *See* ARCAP 13(a)(6); *Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) (observing that appellant is required "to provide 'citations to the authorities, statutes and parts of the record relied on[]' [and] [f]ailure to do so can constitute abandonment and waiver of that claim." (citing *State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n.9 (2004)).

## III. Alleged Procedural Irregularities

### A. Statements Made by Superior Court at Trial

**¶28** Father argues that the superior court committed reversible error by expressing its desire for additional briefing at the close of trial. Father points to passages in the record revealing the court's frustration based on the parties' failure to provide "sufficient evidence or testimony [] on most" of the disputed issues raised at trial. This failure appears to explain why the court ordered them to submit supplemental briefing. The court expressly considered the parties' post-trial briefs, and Father has not shown otherwise. Although Father suggests the court should have ordered a continuance to allow more evidence, he did not make such a request.

### B. Consideration of Unadmitted Exhibit

**¶29** Father contends remand is necessary because the superior court erroneously considered exhibit 13, which was not admitted based on hearsay grounds. Father, however, has not shown the court relied on exhibit 13 to his detriment. *Cf. Gasiorowski v. House*, 182 Ariz. 376, 382 (App. 1994) (explaining an abuse of discretion must result in demonstrable prejudice to a complaining party to be considered reversible error).

### C. Contempt Petition

¶30      Father asserts that the superior court failed to resolve his petition for contempt concerning Mother's alleged failure to comply with a preliminary injunction. Father is correct that the record does not reflect an explicit denial of his request that Mother be found in contempt. Even assuming this court has appellate jurisdiction over the contempt ruling, which typically would be addressed through special action, "when a court fails to expressly rule on a [petition], we deem it denied." *See State v. Mendoza-Tapia*, 229 Ariz. 224, 231, ¶ 22 (App. 2012) (citing *State v. Hill*, 174 Ariz. 313, 323 (1993)). The absence of a written ruling under these circumstances does not constitute reversible error.

## IV. Attorneys' Fees

¶31      As a final matter, Father challenges the superior court's denial of attorneys' fees, which we review for abuse of discretion. *See Democratic Party of Pima Cnty. v. Ford*, 228 Ariz. 545, 547, ¶ 6 (App. 2012). Father challenges the court's findings pursuant to A.R.S. § 25-324(A) that he "acted unreasonably in the litigation."

¶32      The superior court found both parties acted unreasonably, and the record supports that finding. That finding, in turn, supports the court's denial of the parties' requests for attorneys' fees. As such, the court did not abuse its discretion by denying Father's request for attorneys' fees.

### CONCLUSION

¶33      Because Father has shown no error, we affirm the decree.

**¶34** On appeal, both parties request an award of their respective attorneys' fees under A.R.S. § 25-324(A). In our discretion, we award Mother her reasonable attorneys' fees on appeal pursuant to A.R.S. § 25-324(A), based primarily on the unreasonableness of Father's positions and the failure of counsel to fully support the arguments advanced with appropriate citations to the record and citations to controlling authority. As the successful party on appeal, we additionally award Mother her taxable costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:        HB