IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In re the Matter of:

TIFFANY LEE LEHN, *Petitioner/Appellee*,

*v.*

AHMAD A. AL-THANAYYAN, *Respondent/Appellant*.

No. 1 CA-CV 17-0756 FC
FILED 3-7-2019

---

Appeal from the Superior Court in Maricopa County
No.  FC2016-091419
The Honorable Laura M. Reckart, Judge

**AFFIRMED**

---

COUNSEL

Hallier & Lawrence, PLC, Phoenix
By Angela K. Hallier, Brandon L. Leibsohn
*Co-Counsel for Petitioner/Appellee*

Jones, Skelton & Hochuli PLC, Phoenix
By Eileen Dennis GilBride, Sean M. Moore
*Co-Counsel for Petitioner/Appellee*

Owens & Perkins PC, Scottsdale
By Max Nicholas Hanson
*Counsel for Respondent/Appellant*

---

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**H O W E**, Judge:

¶1        Ahmad A. Al-Thanayyan ("Father") appeals from the property allocation, parenting time restrictions, and award of attorneys' fees in the decree dissolving his marriage to Tiffany Lee Lehn ("Mother"). Father claims that the family court inequitably allocated community property and debt in Mother's favor. He also argues that the court had no authority to require him to post a cash bond of $2.5 million for each child to secure their safe return from Kuwait and that the record does not support the need for a bond in that amount. He further claims that the court abused its discretion by awarding Mother her attorneys' fees.

¶2        We affirm the decree. The family court did not abuse its discretion in allocating the community property and debt in Mother's favor because the allocation was equitable given Father's attempt to hide the community's interest in his Kuwaiti businesses and the income from those businesses. The court also had discretion to impose the cash bond under its authority to determine parenting time in the children's best interests, and the amount was not an abuse of discretion given the degree of risk that Father might relocate the children to Kuwait and fail to return them to Mother. Further, the court properly awarded Mother attorneys' fees because it found that a substantial financial disparity existed between the parties.

**FACTS AND PROCEDURAL HISTORY**

¶3        Father is a Kuwaiti citizen who has United States lawful permanent resident status, and Mother is a United States citizen. The parties were married in Arizona in 2006. Shortly thereafter, the parties moved to Kuwait and lived there for five years. Their older child was born in Kuwait in 2008. While the parties lived in Kuwait, Mother and the older child would travel to the United States. When Mother became pregnant

2

with the parties' second child in 2011, Father gave the consent required by Kuwaiti law for her to return permanently to the United States. The children are dual citizens of Kuwait and the United States. When Mother returned to the United States, the parties purchased a home in Arizona. Father traveled to Arizona several times a year, and Mother brought the children to Kuwait each summer for a month-long visit.

¶4            During the marriage, Father worked for the Kuwait Municipal Ministry and a Kuwaiti business called Uptown Trading Company ("Uptown"). In the dissolution proceedings, Mother claimed Father also owned other Kuwaiti businesses, including Al-Thanayyan International Company ("AIC"), Smart Tech, Smart Zone, and Free Zone, and sought disclosure from Father of financial documents concerning those entities. Father did not provide the requested discovery, claiming that he could not obtain the business records because AIC was a family business in which he had no ownership interest and the other companies were merely AIC's subsidiaries.

¶5            At trial, Mother provided evidence that Father was previously listed on the AIC website as an authorized partner, co-founder, and owner and identified himself as its chief executive officer on business cards and social media. Both parties presented evidence that in Kuwait, to bear the name "Al-Thanayyan International Company," the company would need to be owned by a person with that surname. Father claimed his father started AIC.

¶6            The evidence showed that the Kuwait Chamber of Commerce registry had listed Father as an authorized partner of AIC and Smart Zone, but that he was no longer listed as such at the time of trial. Mother's expert, Mary Ann Sharp, testified that the Chamber of Commerce would not have listed Father as an owner unless it received documentary evidence of an ownership interest. Sharp agreed, however, that the Kuwait Ministry of Commerce, not the Chamber of Commerce, maintains the official registry of business ownership in Kuwait, and Father was not listed as an owner of any business on the Kuwait Ministry's registry.

¶7            As further evidence that Father had an ownership interest in or earned additional income from these businesses, Mother testified that during the marriage Father's income was higher than he claimed. Mother's evidence established that Father deposited an average of $12,000 per month in a United States bank account, paid the mortgage and the two children's private school tuition, and gave Mother $8,000 per month for her expenses

even though he claimed that he only earned $12,337 per month from the Kuwait Ministry and Uptown.

¶8 The family court found that Father likely had an ownership interest in these Kuwaiti businesses and had received income for the benefit of the community "at some point in time." The court also found that he had provided insufficient disclosure of those interests or had otherwise hidden assets. For that reason, the court could not determine the value of these business interests. To compensate Mother for her share of the community's interest in these businesses, the court ordered Father to pay the entire balance of a $241,000 community debt and awarded Mother 85 percent of the community Metro Health Savings Federal Credit Union account, which contained $21,132.

¶9 Both parties called experts in international law to address Mother's request that Father's parenting time occur only in Arizona because she feared that if he were permitted to take the children to Kuwait, he would not return them to the United States. Mother also requested that Father be ordered to surrender his passport and United States permanent resident card to his attorney before exercising parenting time in the United States. Mother was concerned because Kuwait is not a signatory to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), which "seeks 'to secure the prompt return of children wrongfully removed to or retained in any Contracting State,' and 'to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" *Abbott v. Abbott,* 560 U.S. 1, 8 (2010) (quoting Hague Convention, Art. 1, Treaty Doc., at 7).[1]

¶10 The experts agreed that Mother would need Father's permission to leave Kuwait with the children but offered conflicting opinions about Mother's legal recourse in Kuwait if Father failed to return the children. Father's expert testified that the parties could enter into a written agreement requiring Father to return the children to Mother in Arizona, but he conceded that such an agreement would be revocable, and he could not cite any case previously implementing such an agreement.

---

[1] Kuwait has not signed the Hague Convention. *See* https://www.hcch.net/en/instruments/conventions/status-table/?cid=24 (listing contracting countries) (last viewed February 4, 2019).

¶11 Mother's expert, attorney Jeremy Morley, testified that he "concentrate[s] exclusively on international family law matters, particularly, including international child custody matters, and international child abduction prevention [and] recovery." He admitted that his opinions about Father were based on facts obtained from Mother and Father's expert, and he acknowledged that to the extent those facts may be incorrect, his opinions would lack foundation. Morley relied on official statements and information about Kuwaiti law from the United States Department of State, the United Kingdom, and non-governmental organizations that provide information relating to international child abductions. Morley testified that he had done extensive research into international child custody disputes, written several articles and two treatises on the subject, and provided expert testimony in courts across the United States and internationally. Father stipulated that Morley was an expert. Morley testified about some of the factors listed by section 7 of the Uniform Child Abduction Prevention Act ("UCAPA") and further testified that other United States courts have applied similar risk assessment factors. On cross-examination, Father questioned the level of Morley's experience with Kuwaiti cases and the bases for his opinions but did agree with some of Morley's testimony on Kuwait family law.

¶12 Evidence showed that Father had told one child to lie to Mother about having a cell phone and had also told that same child he was old enough to visit Kuwait on his own and "more than that." According to Mother, Father refused to explain to her what he meant by the latter comment. Additionally, Father petitioned for divorce in Kuwait and falsely alleged that Mother left Kuwait without legal justification and submitted a power of attorney stating that he is the children's natural guardian.

¶13 The family court ordered Father to exercise parenting time in Arizona unless Mother agreed in writing and was given the children's passports. Additionally, the court ordered that Father could exercise parenting time in Kuwait, but only if he first posted a $2.5 million cash bond per child to secure their safe return. The family court based these parenting time orders on the following findings:

- Kuwait is not a signatory of the Hague Convention and has no extradition treaty with the United States;
- The *potential* legal structures in Kuwait, if any, for Mother to utilize in order to ensure the return of her Children are insufficient and/or illusory;

- Father has insufficient ties to the United States and/or Arizona, given his lack of employment, family ties and property (especially in light of the recent sale of his home);
- Father has significant ties to Kuwait, to include employment, family and property;
- Father is a risk for not returning the Children if they visit him in Kuwait.

. . .

- It is in the Children's best interests to have parenting time with Father;
- A security bond is the only appropriate and available legal structure to allow Father to exercise parenting time in Kuwait; and
- It is in the Children's best interests to impose a security bond that is substantial enough to provide a monetary incentive and/or act as a deterrent to abducting the Children.

The family court then awarded Mother a portion of her attorneys' fees after finding a substantial disparity of financial resources between the parties, and Father timely appealed.

**DISCUSSION**

**1. Property Allocation**

¶14          Father contends the property allocation was inequitable and an abuse of discretion. The family court has broad discretion to allocate community property, "and we will not disturb its allocation absent an abuse of discretion." *Boncoskey v. Boncoskey,* 216 Ariz. 448, 451 ¶ 13 (App. 2007). On appeal, we view the evidence in the light most favorable to affirming the family court's ruling and will affirm if the evidence reasonably supports it. *Id.*

¶15          Under A.R.S. § 25–318, community property is to be divided "equitably" absent a sound reason otherwise appearing in the record. *See Toth v. Toth,* 190 Ariz. 218, 221 (1997); *see also* A.R.S. § 25–318(C) (family court may consider excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community property when dividing such property at dissolution). "Equitable" "is a concept of fairness dependent upon the facts of particular cases." *Toth,* 190 Ariz. at 221. In this

case, the unequal allocation of the community debt and bank account was within the court's discretion based on the evidence, which supported the court's finding that Father attempted to hide the community's interest in or income from the Kuwaiti businesses. *See* A.R.S. § 25–318(C).

¶16            In ordering Father to pay the entire $241,000 community debt, the court referred to its "findings regarding his business interests." Although the court did not specifically refer to these findings in allocating the community bank account, the court's allocation of that asset is similarly supported by its rejection of Father's claim that he did not have an ownership interest in the Kuwaiti businesses. Thus, the court did not abuse its discretion in equitably allocating other community assets or obligations to compensate Mother for her share of the community interest in the businesses. *See Martin v. Martin*, 156 Ariz. 452, 457 (1988) (holding A.R.S. § 25–318 "authorize[s] the court to make an award of money instead of merely dividing property.").

¶17            Father contends that the court had no basis for this unequal allocation because the court (1) did not find that he had an ownership interest in the businesses at the time Mother petitioned for dissolution and (2) did not make a valuation of these business interests. Neither contention has merit. First, the court's finding that Father had received income from his business interests "for the benefit of the community" necessarily implies that Father's business interests existed during the marriage.

¶18            Second, Father cannot complain about the lack of a valuation of his business interests because his attempts to hide these interests and recalcitrance in disclosing information about them made a valuation impossible. Where a party's own "obstructionist behavior" prevents an accurate determination of the community's interest in an asset, the court may award one party a greater share of community assets. *See Hrudka v. Hrudka,* 186 Ariz. 84, 93–94 (App. 1995), *superseded by statute on other grounds as stated in Myrick v. Maloney,* 235 Ariz. 491, 494 ¶ 8 (App. 2014); *see also Thomas v. Thomas*, 142 Ariz. 386, 392 (App. 1984) (a party's concealment of income or assets may be considered when dividing community property). The valuation cases Father cites do not involve a party concealing assets or withholding financial records.

¶19            Father complains that the court abused its discretion in allocating all of a $241,000 community debt to him and 85 percent of a community credit union account containing $21,132 to Mother. Considering that Mother presented evidence that Father had business interests with $3.8 million in capital and Father did not provide any

evidence of the value of his interests, we cannot say that the court's allocations were an abuse of discretion. *See Hrudka,* 186 Ariz. at 93–94.

## 2. Parenting Time Restrictions

**¶20** Father argues that the imposed parenting time restrictions were without legal authority or support in the record. On appeal, we do not reweigh the evidence but defer to the family court's determinations of witness credibility and the weight given to conflicting evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347 ¶ 13 (App. 1998). The family court based its parenting time orders on findings that are consistent with several factors listed in the UCAPA § 7 for determining whether a parent poses a risk of abducting the child. As Mother's expert testified, other United States courts have applied these and similar risk assessment factors. *See, e.g., Moore v. Moore,* 349 P.3d 1076, 1081–83 (Alaska 2015); *MacKinnon v. MacKinnon*, 922 A.2d 1252, 1259 (N.J. 2007); *Katare v. Katare,* 283 P.3d 546, 554–55 (Wash. 2012); *In re Sigmar,* 270 S.W.3d 289, 300–01 (Tex. App. 2008) (applying UCAPA § 7 factors in addition to risk factors listed in state statute). Although Arizona has not adopted the UCAPA, the court nevertheless had the discretion to rely on these factors in the absence of a specific statute to the contrary as long as it also considered the children's best interests. *See* A.R.S. § 25–403.01(B) (court shall adopt a parenting plan that is consistent with the children's best interests); *see also Hays v. Gama,* 205 Ariz. 99, 102 ¶ 18 (2003) (children's best interests are paramount in custody determinations).

**¶21** The evidence supports the court's findings that Father has legitimate reasons to travel to Kuwait, has significant financial and familial ties to Kuwait, and lacks any significant ties to Arizona, particularly since he sold his house and has no job in Arizona. The finding that Father might not return the children to Mother in the United States is supported by evidence that Father had told one child to lie to Mother about having a cell phone and had told the child he was old enough to visit Kuwait on his own and "more than that." Father refused to explain what he meant by "more than that." Moreover, Father petitioned for divorce in Kuwait by falsely alleging that Mother had left Kuwait without legal justification and submitted a power of attorney stating that he was the children's natural guardian. These filings could be viewed as an attempt to establish rights under Kuwaiti law.

**¶22** The finding that Mother would have no significant legal recourse is supported by evidence that Kuwait has not adopted the Hague Convention or entered into a bilateral agreement with the United States

regarding the return of internationally abducted children. Thus, no procedure for the return of the children exists other than those available under Kuwaiti law. Testimony showed that Mother would need Father's permission to leave Kuwait with the children and any written agreement that required Father to return the children could be revoked. Thus, the evidence supports the conclusion that Mother would have little recourse available to challenge Father's rights.

¶23 Father contends the family court abused its discretion by relying on Morley's testimony because he relied on information from Mother, unidentified international law experts, and governmental informational sources. We will affirm the family court's admission of evidence absent an abuse of discretion and resulting prejudice or a mistake of law. *Montgomery v. Miller,* 234 Ariz. 289, 297 ¶ 15 (App. 2014).

¶24 Morley testified that he worked exclusively on international family law matters, including international child custody matters, international child abduction prevention, and recovery of internationally abducted children. He explained that his opinions about Father were based on facts provided by Mother and Father's expert, and he acknowledged that his opinions may lack foundation if those facts were incorrect. The factual statement Mother provided to Morley, however, was substantially consistent with her trial testimony. Therefore, viewing that evidence in the light most favorable to affirming the decree, *see Boncoskey,* 216 Ariz. at 451 ¶ 13, Morley's opinions did not lack foundation.

¶25 Moreover, Morley's opinions in this case were based on his extensive experience and research. He relied on official statements and information about Kuwaiti law from the United States Department of State, the United Kingdom, and non-governmental organizations that provide information relating to international child abductions. Morley testified that he had gained significant knowledge about international child custody disputes, written several articles and two treatises on the subject, and provided expert testimony in the United States and internationally. Father also stipulated that Morley was an expert and that his own expert agreed with some of Morley's testimony regarding Kuwait family law. The family court acknowledged the strengths and weaknesses in both experts' positions and was in the best position to judge their credibility. *See Gutierrez,* 193 Ariz. at 347 ¶ 13. Thus, the court did not abuse its discretion by accepting Morley's testimony and report.

¶26 Father also contends the $2.5 million cash bond violates his fundamental right to custody of his children and is not supported by any

legal authority. But a parent's right to custody and control of his or her children is not absolute. *See In re Appeal in Maricopa Cty. Juv. Action No. JD-6123,* 191 Ariz. 384, 392 (App. 1997). Additionally, the court may regulate international travel within the bounds of due process. *See, e.g., Califano v. Aznavorian,* 439 U.S. 170, 176 (1978); *Eunique v. Powell,* 302 F.3d 971, 974 (9th Cir. 2002); *Sahibzada v. Sahibzada,* 757 S.E.2d 51, 52–54 (Ga. 2014) (holding trial court had discretion to bar father from taking children outside United States without mother's permission); *Katare,* 283 P.3d at 555 ¶ 34. Given the court's findings about Father's business interests, the bond requirement that the court imposed does not preclude Father from traveling with the children altogether; it merely conditions his ability to take the children to Kuwait.

**¶27**        The family court has authority under A.R.S. § 25–403.02(D) to create a parenting plan with such conditions as are "necessary to promote and protect the emotional and physical health of the child." The bond deters violations of the court's parenting time orders and protects the children from the emotional harm that would be caused by an abduction. Therefore, the court had authority to impose the bond pursuant to § 25–403.02(D). Without referring to this statute, this Court upheld the imposition of a bond to assure that a father returned his children and complied with a parenting time order in *Badertscher v. Badertscher,* 10 Ariz. App. 501, 506 (1969), *superseded by statute on other grounds as stated in Bryan v. Bryan,* 132 Ariz. 353, 357 n.4 (App. 1982). Other jurisdictions have approved use of a bond to deter parental abduction of a child. *See, e.g., Moon v. Moon,* 589 S.E.2d 76, 79–80 (Ga. 2003) (holding court has discretion to impose bond to assure return of children); *Charpie v. Charpie,* 752 N.Y.S.2d 291, 293 (App. Div. 2002) (same); *Stonham v. Widiastuti,* 79 P.3d 1188, 1197–98 (Wy. 2003) (same). Pursuant to UCAPA § 8(d)(2), an abduction prevention order may include a bond or other security "in an amount sufficient to serve as a financial deterrent to abduction . . . ." Having found the evidence supports the court's finding that the children were at risk of not being returned to Arizona if Father were allowed to take them to Kuwait, we affirm the imposition of a security bond.[2]

---

[2]        Mother also cites A.R.S. § 25–411(J) as authority for imposing the bond. Because we rely on § 25–403.02(D), we need not decide whether § 25–411(J) would apply here. For the same reason, we also do not address the application of § 25–403.03(F)(7), which authorizes imposition of a bond to ensure the safe return of a child where the court finds a parent has committed an act of domestic violence.

¶28            Father further argues that the amount of the bond was not related to the anticipated costs Mother might incur in litigating the forced return of the children from Kuwait and was excessive given his assets and income. The purpose of the bond, however, was not to compensate Mother for the costs she might incur, but to deter Father from abducting the children. Thus, the cases Father cites concerning supersedeas or other bonds are not persuasive. The family court found that Father had undisclosed ownership interests in and income from Kuwaiti businesses. Because Father had failed to disclose relevant financial records, Mother had no precise evidence of Father's income and ownership interests in the Kuwaiti businesses. She did provide evidence, however, that at least one of Father's businesses in Kuwait may be worth $3 million. Therefore, Father cannot now complain that the amount the court found would act as a deterrent was excessive. Furthermore, given the court's authority to prohibit international travel altogether, *see Katare,* 283 P.3d at 555 ¶ 34, we cannot conclude that the amount of the bond, although significant, is an abuse of discretion. We affirm the parenting time orders and the bond provisions.[3]

### 3. Award of Attorneys' Fees to Mother

¶29            Father argues the family court abused its discretion in denying his request for an award of attorneys' fees and by awarding fees to Mother under A.R.S. § 25–324(A), which authorizes an award of attorneys' fees after considering both parties' financial resources and the reasonableness of their positions throughout the proceedings. We review the award of attorneys' fees under this statute for an abuse of discretion. *Myrick,* 235 Ariz. at 494 ¶ 6.

¶30            According to Father, the family court failed to properly consider the parties' relative financial resources, Mother's ability to pay her own fees, and Father's ability to pay his own and Mother's fees. However, Mother's ability to pay is not dispositive. "[Section] 25–324 does not require 'a showing of actual inability to pay as a predicate' for an award; 'all a party need show is that a relative financial disparity in income and/or assets exists between the parties.'" *Id.* at ¶ 9 (quoting *Magee v. Magee,* 206 Ariz. 589, 589 ¶ 1 (App. 2004) (alteration in *Myrick*).

---

3       For the first time in his reply brief, Father suggests the bond was the result of judicial bias but fails to include any citations or authority. Thus, this issue is not properly before us on appeal. *See Marco C. v. Sean C.,* 218 Ariz. 216, 218–19 ¶ 6 (App. 2008).

¶31 Father disputes any significant disparity in the parties' monthly incomes based on the child support order and the net property allocation in the decree. Although the family court was unable to attribute a specific amount of income to Father from the Kuwaiti businesses, Mother's evidence suggested that Father's income was much higher than reported on the child support order or income tax returns. On appeal, we do not reweigh this evidence and will defer to the family court's resolution of this factual dispute. *See Gutierrez,* 193 Ariz. at 347 ¶ 13. The record supports the finding of a substantial disparity in assets.

¶32 Father contends that, contrary to Mother's assertion, the family court did not find that he took an unreasonable position in the litigation. In awarding attorneys' fees, the court found "it has previously taken into consideration Father's insufficient disclosure and hiding of assets." Thus, Father's argument fails.

## CONCLUSION

¶33 For the foregoing reasons, we affirm. Both parties request an award of attorneys' fees and costs under A.R.S. § 25–324, and Father also requests fees under A.R.S. § 12–341.01. This matter does not arise out of contract; therefore, fees are not warranted under A.R.S. § 12–341.01. After considering the parties' financial resources and the reasonableness of the parties' positions, we award Mother her attorneys' fees and costs upon her compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA