NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

BYRON MURPHY,
*Petitioner/Appellant,*

*v.*

ALEJANDRA RODRIGUEZ,
*Respondent/Appellee.*

No. 1 CA-CV 21-0383 FC
FILED 5-31-2022

Appeal from the Superior Court in Maricopa County
No.  FC2019-002947
The Honorable Margaret LaBianca, Judge

**AFFIRMED**

COUNSEL

kdlaw, PC, Scottsdale
By Kiilu Davis, Sally M. Colton
*Counsel for Petitioner/Appellant*

Best Law Firm, Scottsdale
By Alexus C. Mamood, Tali Collins, Nicholas Cote
*Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Jennifer M. Perkins joined.

_____

**W E I N Z W E I G**, Judge:

¶1        Byron Murphy ("Father") appeals from the superior court's award of child support and attorney fees in favor of Alejandra Rodriguez ("Mother"). We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Father and Mother share one child ("Child"), born in February 2017. The couple met in high school and never married or lived together. Father left Arizona to attend the University of Washington. Mother remained here and gave birth to Child. She became a waitress, earning wages of $4,100 per month, and shared a loft in her parents' home with Child.

¶3        The relationship ended in January 2019. Three months later, Father was drafted by the Arizona Cardinals, signing a four-year contract for nearly $8 million ($160,000 per month), and receiving a signing bonus of nearly $4 million. Father then petitioned the superior court for paternity, legal decision-making, parenting time and child support. At that time, Father also began to make voluntary child support payments to Mother of $1,300 per month.

¶4        The parties agreed on joint legal decision-making and equal parenting time. They could not agree, however, on child support or attorney fees. Given the parents' combined monthly gross income, which exceeded $20,000, the Arizona Child Support Guidelines pegged the presumptive Basic Child Support Obligation at $829 per month for one child. Mother sought an upward deviation to $15,000 per month. Father offered $1,500 per month, plus 100 percent of uncovered healthcare expenses and half the extracurricular and daycare expenses.

¶5        And so, the superior court held a one-day trial on that issue, during which it heard testimony from the parties and their two expert witnesses. The court then found an upward deviation was appropriate and

ordered Father to pay $6,500 per month in child support, plus Child's healthcare expenses, agreed-upon extracurricular activities and school tuition. The court also ordered Father to pay retroactive child support to Mother in the amount of $64,400, along with $47,532 in attorney fees. Father appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.     Child Support

**¶6**          Father argues the superior court's upward deviation was not supported by competent evidence, and Mother did not differentiate her needs and expenses from Child's.

**¶7**          We affirm an award of child support unless it is "devoid of competent evidence." *Nia v. Nia*, 242 Ariz. 419, 422, ¶ 7 (App. 2017). We accept the superior court's findings of fact unless they are clearly erroneous, but draw our own legal conclusions from those facts. *Nash v. Nash,* 232 Ariz. 473, 476, ¶ 5 (App. 2013). We interpret statutes and the Child Support Guidelines de novo. *See Milinovich v. Womack*, 236 Ariz. 612, 615, ¶ 7 (App. 2015).

**¶8**          Parents owe "a duty of support to a child," and may be ordered "to pay an amount reasonable and necessary for support of the child." *See* A.R.S. § 25-320 (A). The legislature directed our supreme court to "establish guidelines for determining the amount of child support" and "criteria for deviation from them on all relevant factors," including:

> (1) the financial resources and needs of the child, (2) the financial resources and needs of the custodial parent, (3) the standard of living the child would have enjoyed if the child lived in an intact home with both parents to the extent it is economically feasible considering the resources of each parent and each parent's need to maintain a home and to provide support for the child when the child is with that parent, (4) the physical and emotional condition of the child, and the child's educational needs, (5) the financial resources and needs of the noncustodial parent, and (6) the medical support plan for the child.

A.R.S. § 25-320(D).

¶9          To that end, the supreme court adopted the Arizona Child Support Guidelines in 2015, providing a framework to determine the amount of child support "consistent with the reasonable needs of children and the ability of parents to pay."  A.R.S. § 25-320 app. ("Guidelines") § 1(B).  The Guidelines were amended in 2018 and 2022.  *Id.*  The 2018 Guidelines, which control here, explain that the "total child support amount approximates the amount that would have been spent on the children if the parents and children were living together," and "[e]ach parent contributes his or her proportionate share of the total child support amount."  Guidelines (Background).

¶10          The Guidelines supply a chart to determine a presumptive child support award based on the parents' combined monthly income.  *See* Guidelines § 3.  "As the parents' combined gross income increases, so does the presumptive Basic Child Support Obligation."  *Nash*, 232 Ariz. at 476, ¶ 8. When, as here, the combined income is $20,000 or more per month, the presumptive child support award is $829.12 per month.  *See* Guidelines §§ 2(G)(2), 8.  Arizona courts must order this presumptive child support amount unless "application of the guidelines would be inappropriate or unjust in a particular case."  *See* A.R.S. § 25-320(D); Guidelines § 20(A).  A parent who seeks an upward deviation from the presumptive award bears the burden to prove a deviation is proper:

> The party seeking a sum greater than [the] presumptive amount shall bear the burden of proof to establish that a higher amount is in the best interests of the children, taking into account such factors as the standard of living the children would have enjoyed if the parents and children were living together, the needs of the children in excess of the presumptive amount, consideration of any significant disparity in the respective percentages of gross income for each party and any other factors which, on a case by case basis, demonstrate that the increased amount is appropriate.

Guidelines § 8.

*Burden of Proof*

¶11          As a threshold issue, Father argues the superior court erroneously placed the burden on him to rebut the need for an upward deviation.  Although the court might have confused the issue in remarks from the bench, its child support order identified the proper burden: "The proponent of an upward deviation bears the burden of showing that some upward deviation is in the best interest of the child."  *Cf. Woodford v.*

4

*Visciotti*, 537 U.S. 19, 24 (2002) ("[R]eadiness to attribute error [based on imprecise statements of the burden of proof when court cites correct burden in its order] is inconsistent with the presumption that state courts know and follow the law.").

*Record Evidence*

**¶12**        Father next argues the record lacked competent evidence to support the court's upward deviation of child support.  Before turning to the award, however, we emphasize that Father never asked the court to issue findings of fact and conclusions of law under Arizona Rule of Family Law Procedure 82(a)(1), and we thus assume the court "found every controverted fact necessary to sustain the judgment." *See Femiano v. Maust*, 248 Ariz. 613, 616, ¶ 12 (App. 2020) (citation omitted).

**¶13**        Even so, the record includes evidence to support the child support award.  As the court explained:

> The evidence warrants an upward deviation to $6,500 per month in current child support, which reflects Mother spending approximately $3,000 to $4000 in monthly housing costs, $500 to $1,000 in monthly childcare costs, $1,150 in monthly vehicle costs and $1500 in monthly costs for the child's activities, toys, clothes, vacations, eating at restaurants and other miscellaneous expenditures, as well as paying her other expenses.

**¶14**        We examine each monthly expense in turn.

**¶15**        <u>Housing costs ($3,000 to $4,000)</u>.  Mother offered evidence of the costs and expenses for her to acquire and maintain a home consistent with the standard of living Child would have enjoyed if he "lived in an intact home with both parents."  *See* A.R.S. § 25-320(D)(3).  Mother and Child were living in her parents' house in a doorless loft bedroom.  Mother testified that she wanted to provide Child with "the best life on both sides," and she emphasized that acquiring a home would benefit the child.  She presented market prices for potential homes, and her expert testified about a range of housing prices.

**¶16**        Father counters that the evidence was speculative because Mother never actually paid for housing.  But the Guidelines do not require

proof of historical costs and expenses for children to share reasonably in their parents' success. *See Nash*, 232 Ariz. at 480, ¶¶ 26-27.

**¶17**        Vehicle costs ($1,150). Mother's expert testified that Mother had to replace her old car after a car accident. Mother presented evidence, including bank statements and her affidavit of financial information ("AFI"), and verified the cost to lease a reliable vehicle for transporting Child.

**¶18**        Miscellaneous expenditures ($1,500). As part of a catch-all category, the court identified "activities, toys, clothes, vacations, [and] eating at restaurants." The amount of child support awarded was supported by evidence including bank statements, AFIs and expert testimony on these childcare expenses. But the court also included a general reference to Mother's "other expenses," which were never identified or itemized. This label is ambiguous and leaves room for speculative error. Even so, we can affirm because the record supports $1,500 per month for the appropriate child expenses alone. *See Nia*, 242 Ariz. at 422, ¶ 7 (appeals court may uphold a child support award "for any reason supported by the record").

**¶19**        Childcare costs ($500 to $1,000). Father argues the court had no factual basis to award Mother this monthly amount for childcare costs because the maternal grandmother watched Child, which presumably means that Mother had no childcare costs. But the record includes reasonable evidence on this point. Mother's expert testified, based on actual prior childcare costs, that full-time childcare would cost $1,300 per month, and the court heard evidence that Father had been consistently paying $800 per month to Mother for childcare, even when Child was not enrolled. Nor does this court reweigh evidence or regauge credibility on appeal. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). The court did not abuse its discretion.

*Separate Expenses*

**¶20**        Father contends that the upward deviation should be reversed because Mother failed to differentiate her own needs and expenses from Child's, but the superior court awarded $6,500, less than half the amount she requested ($15,000), and we assume the court's reduced award accounted for any conflated or improper costs. *See Fuentes v. Fuentes*, 209 Ariz. 51, 55–56, ¶¶ 17–18 (App. 2004) ("Although the trial court's signed minute entry does not specifically detail [Father]'s financial situation, the

foregoing evidence is presumed to have been fully considered by the court prior to issuing its decision.").

**¶21** Mother's failure to distinguish "every penny" of Child's expenses from her own does not compel the superior court to deny an upward deviation entirely. *Cf. Nash*, 232 Ariz. at 478, ¶ 18 (mother's failure to "prove every penny" of an upward deviation did not mean she is entitled to no deviation at all).

*Longevity of Father's Income*

**¶22** Father also emphasized the short-lived careers of "many professional football players," which sometimes end "after a short time due to physical injuries." To that point, however, we remind the parties that they can move for modification should their circumstances change. *See* A.R.S. § 25-327(A); Guidelines § 24(A) ("[E]ither parent . . . may ask the court to modify a child support order upon a showing of a substantial and continuing change of circumstances.").

## II. Attorney Fees

**¶23** And last, Father contests the award of attorney fees to Mother under A.R.S. § 25-324. We review attorney fee awards for an abuse of discretion. *See Lehn*, 246 Ariz. at 286, ¶ 29.

**¶24** The superior court may award attorney fees to a party under § 25-324 based on the financial resources of both parties, and the reasonableness of their positions. In awarding Mother one-half of her attorney fees here, the court found a substantial disparity of financial resources, and that "Father acted unreasonably in the litigation by maintaining the position that Arizona law does not support an upward deviation in this case; and by delayed engagement through several aspects of the litigation, including discovery, mediation and settlement correspondence."

**¶25** The court erred when it found Father "acted unreasonably in the litigation" by opposing an upward deviation. Arizona law requires the courts to order the presumptive child support award set forth in the Guidelines. *See* A.R.S. § 25-320(D); Guidelines § 20(A). Mother bore the burden to prove an upward deviation was appropriate and the "higher amount [was] in the best interests of the children." *See Nash*, 232 Ariz. at 478, ¶ 16; Guidelines § 8.

**¶26** Father did not act unreasonably by exercising his statutory rights, and holding Mother to her burden of proof. *See Routen v. West*, 142 F.3d 1434, 1440 (Fed. Cir. 1998) ("[A] presumption affords a party, for whose benefit the presumption runs, the luxury of not having to produce specific evidence to establish the point at issue.").

**¶27** Even so, we still affirm because this error was harmless. For one, the record shows an enormous disparity in income between the parties. *See Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 9 (App. 2014) (financial disparity is one non-exclusive factor courts must consider when awarding fees under § 25-324). And the court found Father to be unreasonable for other permissible reasons, including Father's conduct during discovery and mediation. *See id.* (reasonableness is a second factor under the current statute).

## CONCLUSION

**¶28** We affirm. In our discretion, we award Mother her reasonable fees and costs incurred on appeal, contingent on compliance with ARCAP 21. *See Magee v. Magee*, 206 Ariz. 589, 593, ¶ 22 (App. 2004).



AMY M. WOOD • Clerk of the Court
FILED: AA