NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

TANNER JAY SCHRITTER, *Petitioner/Appellee*,

*v.*

LORINDA LYNN SCHRITTER, *Respondent/Appellant*.

No. 1 CA-CV 25-0546 FC

FILED 04-24-2026

Appeal from the Superior Court in Mohave County
No. S8015DO201700175
The Honorable Megan A. McCoy, Judge

**AFFIRMED**

COUNSEL

Berkshire Law Office PLLC, Tempe
By Alexandra Sandlin, Keith Berkshire
*Counsel for Petitioner/Appellee*

David Dick & Associates, Chandler
By David Alan Dick
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

---

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**B E C K E**, Judge:

¶1        Lorinda Lynn Schritter ("Mother") appeals from a post-decree order modifying parenting time, affirming child support, and allocating fees from a psychological evaluation. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mother and Tanner Jay Schritter ("Father") divorced in 2018 and have one child, born in 2015. Father lives in Kingman and Mother lives in Gilbert. The original dissolution decree awarded the parties joint legal-decision making authority with Father having tie-breaking authority if the parties could not agree, week on/week off parenting time, and ordered Father to pay $91 in monthly child support.

¶3        By 2024, after resolving various petitions and cross-petitions seeking to modify the original decree (and accounting for related appeals), Father had sole legal decision-making authority, the child lived with Father during the school year and Mother during the summer break, with the non-custodial parent receiving parenting time every other weekend. Mother was also required to pay nearly $500 in monthly child support. *See Schritter v. Schritter*, 1 CA-CV 20-0399 FC, 2021 WL 3089042 (Ariz. App. July 22, 2021); *Schritter v. Schritter*, 1 CA-CV 23-0550 FC, 2024 WL 4356500, at *6, ¶ 40 (Ariz. App. Oct. 1, 2024).

¶4        In March 2024, Father petitioned to modify parenting time and asked that Dr. Ronn Lavit be appointed to perform a parenting evaluation. Father volunteered to pay the entire cost of retaining Dr. Lavit subject to possible reallocation.

¶5        Mother denied the allegations and argued Father had failed to show a change of circumstances that materially affected the child, and thus, his petition should be summarily denied. Mother also challenged the request to have Dr. Lavit appointed. After hearing oral argument, the superior court appointed Dr. Lavit and ordered Father to pay the costs of

the evaluation, subject to potential reallocation. The court also appointed Samuel Vederman as the best interests attorney ("BIA") for the child.

¶6  Both before and at the hearing on Father's petition, the parties disputed their financial circumstances, including Mother alleging she had recently lost her job.

¶7  Mother, Father, and the child's clinical therapist testified at the April 2025 hearing. The court received numerous exhibits, including the BIA's position statement and Dr. Lavit's report, as well as exhibits and testimony from prior hearings.

¶8  In June 2025, the superior court affirmed Father's sole legal decision-making authority and largely affirmed the parenting time schedule with minor changes, including a clarification of end-of-summer transfers and a modification to the winter break schedule so that each party has parenting time for half of each break. However, the court significantly changed orders concerning contact between the parties, the child, and their families. Notably, the court ordered the non-custodial parent to not have any contact with the child during the custodial parent's parenting time except for a ten-minute phone call each week.

¶9  As for child support, the superior court attributed income of $20 per hour to Mother beginning in August 2024, which included her period of unemployment. Based on Mother's changed circumstances, including the loss of health insurance, the court found Mother's new child support obligation would be $492 per month under the Guidelines. But because this change was less than 2%, the court found it did not warrant modification and affirmed the earlier child support order.

¶10  Finally, because both parties participated and benefited from the evaluation, the superior court ordered Mother to reimburse Father $10,000 towards the cost of more than $50,000 for Dr. Lavit's evaluation. In doing so, the court considered the finances of each party.

¶11  Mother timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(2).

## DISCUSSION

### I. Mother Has Shown No Error or Resulting Prejudice by the Court Considering Father's Modification Petition.

¶12 Mother argues the superior court erred by modifying parenting time without legal justification under A.R.S. § 25-411(A). Mother alleges the court erred by holding an evidentiary hearing because Father filed his petition in March 2024, less than one year after the previous parenting time order issued in April 2023, without presenting affidavits demonstrating the child's environment endangered the child's physical, mental, or emotional health.

¶13 Although Father filed his petition within one year of the previous order contrary to A.R.S. § 25-411(A), Mother's argument fails for three reasons. First, because Mother did not raise the argument in the superior court, she waived the issue. *Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007). Second, even if she had timely objected under § 25-411, she needed to seek relief by special action, which she failed to do. *In re Marriage of Dorman*, 198 Ariz. 298, 302, ¶ 11 (App. 2000) ("The time for achieving the statute's intended protections . . . has passed if noncompliance is first brought to our attention on appeal from the final judgment."). Third, even if this issue was properly before us, "we will not reverse for alleged noncompliance with § 25-411 on appeal absent a showing of prejudice." *Id.* at 303, ¶ 12. And "an appellant will have great difficulty showing prejudice . . . after a hearing has occurred." *Id.* Mother does not argue, let alone show, that Father's premature petition prejudiced her. Accordingly, Mother fails to show error.

### II. The Superior Court Did Not Abuse Its Discretion in Modifying the Parenting Plan.

¶14 Mother argues the superior court abused its discretion in modifying the parenting plan and asserts its best-interests findings were "legally deficient and selectively applied." Mother's challenge is limited to the slight modification to the winter break parenting schedule. The court divided the winter break in half so that each party had parenting time during the break every year rather than alternating years. We review a superior court's parenting time order for an abuse of discretion, *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013), and will affirm if the court's ruling is supported by substantial evidence, *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

**¶15**         While a parent is "entitled to reasonable parenting time" to ensure "substantial, frequent, meaningful and continuing contact" with the child, the superior court is required to determine parenting time in accordance with the best interests of the child. A.R.S. §§ 25-403(A); -403.01(D). It must make "specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B).

**¶16**         Here, the superior court made detailed findings for each factor. Mother takes issue with how the court weighed the evidence for each factor, but we do not reweigh the evidence on appeal. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). We defer to the court's credibility determinations and the weight given to conflicting evidence. *Id.*

**¶17**         Along with the conflicting evidence provided by Mother and Father, the court considered Dr. Lavit's report opining that Mother had issues with accepting responsibility in her life, including blaming the court system for her unemployment, when in reality, Mother lost her job due to her negative attitude. And contrary to Mother's argument, the superior court did not reduce her parenting time. The court's order merely changed parenting time for a full winter break every other year to parenting time for half of winter break every year. Recognizing the court considered conflicting evidence, Mother fails to show the court abused its discretion in modifying the winter break parenting time schedule.

### III.     The Superior Court Did Not Abuse Its Discretion by Limiting Non-Custodial Parental Contact with the Child.

**¶18**         Mother next argues that the superior court abused its discretion when it reduced phone calls between the non-custodial parent and the child from twice a week to once a week. She alleges the court improperly weighed the evidence and ignored both the BIA's statement and Dr. Lavit's report. We review a superior court's parenting time order for an abuse of discretion. *Nold*, 232 Ariz. at 273, ¶ 11. But we do not reweigh the evidence; we defer to the superior court's determinations of the weight given to conflicting evidence. *Lehn*, 246 Ariz. at 284, ¶ 20.

**¶19**         The superior court has broad authority to dictate a parenting plan consistent with the child's best interests in contested cases and to "determine . . . factors . . . necessary to promote and protect the emotional and physical health of the child." A.R.S. §§ 25-403; -403.02(B), (D). The court heard testimony that contact with Mother during Father's parenting time worsened the child's concerning behavior. Dr. Lavit's report indicated the

child felt he was often "caught in the middle of his parent's arguing." During at least one instance of Father's parenting time, Mother's conversation with the child on the phone increased conflict between Father and the child and between the parties themselves.

**¶20** The court's order noted the custodial parent could consent to more contact in writing and it hoped both parties would be generous in permitting more contact when in the best interest of the child. But it noted that these "clear boundaries must be in place" to ensure "better communication and clear designation of who determines contact with the child during each parent's time with the child." Additionally, the court applied these restrictions to both parties. Mother fails to show error.

## IV. The Superior Court Did Not Abuse Its Discretion in Refusing to Modify Child Support.

**¶21** Mother next argues the superior court improperly imputed income to her despite "undisputed evidence that her unemployment was involuntary." Mother also claims the court excluded Father's income streams without explanation. We review child support awards for an abuse of discretion, *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018), and accept the court's factual findings unless clearly erroneous, *Sherman v. Sherman*, 241 Ariz. 110, 113, ¶ 9 (App. 2016).

### A. Mother's Income

**¶22** Mother argues the superior court should not have imputed income to her from August 2024 to January 2025 because she was involuntarily unemployed. The court attributed $20 per hour—Mother's income since January 2025—to Mother during her period of unemployment because it found she was voluntarily unemployed. The court also noted that, even if Mother's unemployment was considered involuntary, it would be reasonable for Mother to seek replacement income.

**¶23** A.R.S. § 25-320(N) requires the superior court to "presume, in the absence of contrary testimony, that a parent is capable of full-time employment at least at the applicable state or federal adult minimum wage, whichever is higher." The Guidelines provide factors to consider in attributing income when a parent is unemployed, whether voluntary or involuntary. A.R.S. § 25-320 app. § II(A)(4)(e). In addition to the child's best interests and "all other relevant factors," if unemployment is involuntary, the court considers "whether it is reasonable for that parent to find replacement income above actual earnings." *Id.* at II(A)(4)(e)(i). If voluntary, but with reasonable cause, the court should consider "whether

the parent's decision and its benefits outweigh the effect that the reduced income has on the child's best interests." *Id.* at II(A)(4)(e)(ii). If voluntary but without good cause, the court should consider "whether income attribution is appropriate . . . and . . . [i]f the parent has the ability to find suitable work in the marketplace at a greater income based on the parent's current educational level, training and experience, and physical capacity." *Id.* at II(A)(4)(e)(iii), (iv).

¶24 Mother argues the superior court ignored "undisputed evidence that her unemployment was involuntary and that she missed significant work due to her court-mandated participation in Dr. Lavit's evaluation process." Not so. This fact was heavily disputed. There was competing evidence on the cause of Mother's unemployment. Mother alleged it was because she missed too much work to attend court hearings.[1] However, Father testified and presented documentary evidence that Mother was fired for dishonesty, insubordination, and for being "combative, uncooperative, and condescending with customers." The superior court found Father's testimony and evidence more credible and determined Mother was unemployed voluntarily "due to her own behavior." "We do not reweigh evidence or determine the credibility of witnesses." *Clark v. Kreamer*, 243 Ariz. 272, 276, ¶ 14 (App. 2017) (internal quotations omitted). Because Mother started working again in January 2025, earning $20 per hour, the superior court properly determined it was appropriate to attribute this hourly income for her period of unemployment as well.

¶25 Furthermore, the superior court found, whether her unemployment was voluntary or involuntary, attributing $20 per hour to her was appropriate because it was "reasonable for Mother to seek replacement income." The superior court did not err in attributing income to Mother.

B. *Father's Income*

¶26 Mother argues the superior court erred when it failed to include Father's income from investments in its child support calculations. In its order, the court affirmed its child support order issued in February 2025. The court determined that Mother's change in income and loss of

---

[1] Mother also asks this court to consider evidence not in the appellate record showing her termination was involuntary. We do not consider evidence that was not part of the record before the superior court. *See Nelson v. Nelson*, 164 Ariz. 135, 138 (App. 1990).

health insurance from August 2024 onward did not constitute a significant change to warrant adjusting child support. The court made no findings as to Father's income. But because Mother did not request findings of fact and conclusions of law, *see* Ariz. R. Fam. Law P. 82(a), we assume the court found every fact necessary to support the judgment if factually supported, *see Bender v. Bender*, 123 Ariz. 90, 92 (App. 1979).

¶27 The child support order issued April 2023 attributed $3,091.51 per month to Father from disability income. And at the evidentiary hearing in April 2025, Father confirmed he received disability income every month and an annual distribution from a partnership his grandfather started when he was young. However, Father testified that the distribution varies each year. In 2023, Father received $20,000 from the partnership, but in 2024, he estimated that he received $5,000, and some years, he received no money. Per Section II(A)(1)(d) of the Guidelines, "a court has discretion to consider whether non-continuing or non-recurring income is considered income for purposes of calculating child support." The court was within its discretion to disregard this transient income in calculating child support.

¶28 Mother also argues that the superior court failed "to scrutinize [Father's] claimed disability." On cross-examination, Mother questioned Father about his disability and his ability to work. Father explained his disability and how it prevents him from working a desk job. Mother relies on a court finding in the 2018 dissolution decree that Father "ha[d] the ability to earn at least minimum wage," and she generally criticizes the court's reliance on Father's testimony at the most recent hearing. Because we do not reweigh evidence or determine credibility on appeal, Mother fails to show error. *Clark*, 243 Ariz. at 276, ¶ 14.

## V. The Superior Court Did Not Abuse Its Discretion When It Reallocated Some of the Costs of Dr. Lavit's Evaluation.

¶29 Mother argues the superior court abused its discretion in the allocation of Dr. Lavit's fees. Because she objected to the evaluation, Mother asserts she should not be responsible for the expense and accuses Father of increasing the costs of the evaluation. Mother also argues she should not pay for the evaluation because Father has "significantly greater financial resources."

¶30 In contested legal decision-making and parenting time proceedings, the court may order an investigation and report. A.R.S. § 25-406(A). And if one is ordered, the court must "allocate the cost based on the financial circumstances of both parties." *Id.* at (B). Mother's arguments

8

concerning her objection to the evaluation and Father's actions "increasing costs" are not dispositive.

¶31　　　　Although Mother's argument concerning Father's financial resources is relevant, the record does not support her assertion. Dr. Lavit's evaluation cost more than $50,000 and the court ordered Mother to pay only $10,000—less than 20% of the total. Based on the record presented, Mother's monthly income is greater than Father's monthly income. Thus, Mother fails to show the court abused its discretion in ordering her to pay a portion of the evaluation expenses.

## VI.　Mother's Due Process Rights Were Not Violated.

¶32　　　　Finally, Mother argues her due process rights were violated because the evidentiary hearing was held almost a year after Father petitioned to modify parenting time. The remainder of Mother's due process argument consists of repeating the same arguments discussed above. Because Mother has failed to show error, we will not repeat that analysis here.

¶33　　　　As to the delay of the evidentiary hearing, Mother fails to show she was prejudiced. Mother twice moved to continue the proceedings. And some of the delay arose from discovery disputes, initiated by Mother, regarding Father's income. Other delays were due to administrative issues. The superior court "has broad discretion over the management of its docket," *Findlay v. Lewis*, 172 Ariz. 343, 346 (1992), and on this record, Mother has not shown that her due process rights were violated.

## CONCLUSION

¶34　　　　We affirm. Both parties request attorneys' fees and costs on appeal under A.R.S. § 25-324. After considering the reasonableness of their positions and financial resources, we decline to award either party fees. Father is entitled to his costs on appeal upon compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:　　　　JR