NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

CLARYN LEIGH, *Petitioner/Appellee,*

*v.*

RICO CHAVEZ, *Respondent/Appellant.*

No. 1 CA-CV 25-0446 FC

FILED 05-29-2026

Appeal from the Superior Court in Maricopa County
No. FC2024-090715
The Honorable Michael Valenzuela, Judge

**AFFIRMED**

APPEARANCES

Rico Chavez, Mesa
*Respondent/Appellant*

Claryn Leigh, Mesa
*Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Veronika Fabian and Chief Judge Randall M. Howe joined.

---

**B R O W N**, Judge:

¶1        Rico Chavez ("Father") appeals the superior court's order establishing legal decision-making, parenting time, and child support for the child he shares with Claryn Leigh ("Mother"). For the following reasons, we affirm.

## BACKGROUND

¶2        Father and Mother are the parents of Emily (a pseudonym), who was born in 2016. In February 2024, Mother petitioned to establish legal decision-making, parenting time, and child support. On April 17, 2025, the superior court held a trial on Mother's petition.

¶3        In the months preceding the trial, Father had several encounters with police. In February 2025, according to police reports, Father tried to steal from two grocery stores in Chandler and Gilbert by pretending to be a store manager; Father was later arrested for attempted theft and impersonation. A few weeks later, police performed several welfare checks on Father at his apartment. Officers responded twice to Father's apartment after reports from Father's roommate that Father had been acting erratically and had accused the roommate of taking Emily. Father was taken to the hospital for treatment following the second visit. Two days later, after returning home from the hospital, Father called police claiming Emily was missing and when police arrived they noted that he was disoriented and confused. Police found multiple prescription medication bottles in Father's apartment. One of these medications had been prescribed three days earlier for 30 pills, but officers found that only 12 remained in the bottle.

¶4        Police had also been involved with Father in early 2024, when Father reported that Emily had been inappropriately touched by Mother's boyfriend's son. Police interviewed Emily and later spoke with the son, Mother, and her boyfriend. Officers determined there was no probable cause for any charges related to these incidents.

**¶5**        In its subsequent ruling, the superior court acknowledged it had considered appointing a court appointed advisor ("CAA") before issuing final orders, but ultimately "determined that it ha[d] sufficient evidence" based on the trial evidence.  Though noting it had some concern about Mother's home based on the reports of inappropriate touching, it did not find her home was unsafe.  Yet the court had "significant concern[s]" about the safety of Father's home and his lack of "mental fitness to safely care for the child in an unsupervised setting."  The court awarded Mother sole legal decision-making authority, required Father's parenting time to be supervised, and ordered him to pay $417 per month in child support.

**¶6**        Father timely appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

**¶7**        Father raises many issues on appeal, most of which challenge the evidence presented at the hearing.  We first note that as the appellant, Father needed to ensure the record on appeal contains the transcripts necessary for consideration of the issues he has raised.  *See* ARCAP 11(c); *State v. Burton*, 205 Ariz. 27, 30, ¶ 16 (App. 2003).  The record before us does not include a transcript of the trial, so we presume the evidence presented at trial supports the superior court's rulings.  *Blair v. Burgener*, 226 Ariz. 213, 217, ¶ 9 (App. 2010).

**¶8**        We also note that neither party has provided references to the record in support of their arguments, as required by the civil appellate rules.  *See* ARCAP 13(a)(7), (b)(1) (requiring both opening and answering briefs to contain appropriate references to portions of the record on which the party relies).  Though we may find a party has waived arguments by failing to abide by ARCAP 13's requirements, in our discretion, we will not treat either party's failure as a waiver of their arguments.  *See Ramos v. Nichols*, 252 Ariz. 519, 523, ¶¶ 10–11 (App. 2022); *Varco, Inc. v. UNS Elec., Inc.*, 242 Ariz. 166, 170, ¶ 12 n.5 (App. 2017).

**¶9**        We review rulings on parenting time and legal decision-making for an abuse of discretion, *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018), viewing the facts in a light most favorable to affirming the superior court's order, *Hefner v. Hefner*, 248 Ariz. 54, 57 n.2 (App. 2019).  Father first argues the court abused its discretion under A.R.S. § 25-403.  He claims the court must make its determination based on "reliable, corroborated evidence" and that such determinations must be "supported by express findings."  He then identifies various pieces of evidence he

believes the court erroneously relied on, as well as evidence he feels the court improperly ignored. Father's argument is not persuasive. In establishing legal decision-making, A.R.S. § 25-403 requires the court to consider a list of factors "relevant to the child's physical and emotional well-being," and to make specific findings about those relevant factors. The court made specific findings as to the relevant factors in its order.

¶10 Father's claim regarding the adequacy of the evidence is essentially an argument that the court improperly gave greater weight to certain pieces of evidence than others. But we do not reweigh evidence on appeal. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019).

¶11 Next, Father argues the court's failure to appoint the CAA caused the court to "rush[] to judgment," and thereby denied him due process. "Generally, due process entitles a party to notice and an opportunity to be heard at a meaningful time and in a meaningful manner, as well as a chance to offer evidence." *Solorzano v. Jensen*, 250 Ariz. 348, 350, ¶ 9 (App. 2020). Father does not explain how the court's decision to forgo using a CAA either deprived him of notice of any issue litigated at the hearing, or the opportunity to present relevant evidence on such issues. Though he contends the court denied him "the ability to subpoena mandated reporters, obtain therapy records, or present rebuttal witnesses," we see no reason he could not present any relevant evidence at the hearing, or how appointment of a CAA would have affected his ability to present his evidence. Father has not shown the court deprived him of due process.

¶12 Father also contends the court improperly ignored evidence of Mother's boyfriend's son inappropriately touching Emily, while also giving credence to Mother's evidence and testimony. But the court did not ignore the allegations of the son's inappropriate behavior toward Emily; the court acknowledged it had concerns about the behavior but ultimately concluded Mother's home was safe. Father has not shown the court failed to consider this evidence.

¶13 Father next raises several arguments concerning the evidence presented at the hearing. He claims Mother's testimony about Emily's counseling was "incomplete and misleading," and her testimony of his impairment included "hearsay and unsupported claims." He also asserts that the court relied on fabricated evidence obtained through extortion. And he contends the court "misused" evidence about his pending charge for driving under the influence of a prescription medication. Without a transcript, we cannot assess his claims. Even so, these arguments essentially ask us to reevaluate and reweigh evidence presented to the

superior court, which we will not do. *Lehn*, 246 Ariz. at 284, ¶ 20. Father has not shown the court erred.

¶14 Lastly, Father challenges the court's child support order. As part of its order, the court allowed Mother to claim Emily as a dependent for tax deduction purposes in the years 2025 through 2027; Father could do the same in 2028 and 2029. However, the court also ordered that "[e]ach [y]ear, Father may claim exemptions allocated from above only if all child support and arrears ordered for the year are paid by December 31 of that year." Father claims this is a "behavioral sanction," and that the court had to allocate child support obligations "in a manner that is equitable and child-focused." But the Child Support Guidelines explicitly allow a court to condition such tax benefits on that parent's compliance with child support obligations. A.R.S. § 25-320 app. § XI.C.1. Father has not shown the court erred.

## CONCLUSION

¶15 We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR

5