NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

SEAN FARRELL, *Petitioner/Appellee*,

*v.*

SAMANTHA MYERS, *Respondent/Appellant*.

No. 1 CA-CV 21-0500 FC

FILED 5-12-2022

Appeal from the Superior Court in Maricopa County
No. FC2020-001307
The Honorable Gregory Como, Judge

**AFFIRMED**

COUNSEL

Alongi Law Firm PLLC, Phoenix
By Thomas P. Alongi
*Counsel for Respondent/Appellant*

————————————————

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

————————————————

**F U R U Y A**, Judge:

¶1            Samantha Myers ("Mother") appeals the decree of dissolution dissolving her marriage to Sean Farrell ("Father"). Mother challenges the superior court's orders concerning joint legal decision-making authority, parenting time, and child support. Father did not file an answering brief. In our discretion, and because the best interests of a minor child are implicated, we decline to treat his failure to file an answering brief as a confession of error. *See Michaelson v. Garr*, 234 Ariz. 532, 544, ¶ 4 n.3 (App. 2014) (citing *Gonzales v. Gonzales*, 134 Ariz. 437, 437 (App. 1982) ("Although we may regard [the] failure to respond as a confession of reversible error, we are not required to do so.")). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            Mother and Father divorced by decree in July 2021. They share one minor child, H.F. (born in 2008). As part of the dissolution decree, the court awarded the parties joint legal decision-making authority. Mother contends the court abused its discretion because Father committed significant domestic violence during a February 17, 2020 incident.

¶3            The police report documenting this incident recounts Mother's version of events. On February 17, 2020, the parties had a verbal altercation at their residence concerning their pursuit of new romantic relationships. At some point during the argument, Mother alleged Father came out of a bedroom with a loaded handgun, which he cocked and pointed at Mother. Mother then reported Father later walked out of the kitchen with the handgun, placing it back in a safe. Thereafter, Mother told Father she had to go to the grocery store and left the residence with H.F. Police interviewed Father. He acknowledged the argument but denied pointing a gun at Mother or physical violence. After investigation, police ultimately closed the case as "unfounded."

¶4            Based on this incident, Mother successfully petitioned for a protective order against Father in the Peoria Municipal Court. The order

initially prohibited Father from contacting Mother or H.F. except through email, texting, or regular mail. Father later petitioned for dissolution of the marriage in superior court and requested an evidentiary hearing be held in that court to also review the protective order, which occurred in May 2020. After the hearing, Judge Como deleted H.F. from the protective order's terms but otherwise upheld it and required the parties to communicate through a single, monitored messaging application and only about matters concerning H.F. In March 2021, Mother successfully renewed the protective order before a different judge because Father had violated the communication restriction by sending her a "happy birthday" message.

¶5        At the subsequent July 2021 dissolution trial before Judge Como, Father testified that, as a truck driver, he customarily carried the handgun for work. He explained that from the time he came home on February 17, 2020, until he put the holstered handgun back in the safe that day, the handgun remained in its holster on the kitchen counter.

¶6        The court ultimately found that although Father had committed domestic violence against Mother on February 17, 2020, the incident was not significant domestic violence as contemplated by statute. *See* Ariz. Rev. Stat. ("A.R.S.") § 25-403.03(A). The court then found Father had rebutted the statutory presumption regarding joint legal decision-making authority that arose from Father's non-significant domestic violence against Mother. *See* A.R.S. § 25-403.03(D), (E).

¶7        The parties reached an agreement on parenting time, entering its terms on the record, and the superior court approved the agreement. *See* Ariz. R. Fam. Law P. 69. The court "strongly encourage[d] Father to participate in counseling with [H.F.]." For purposes of child support, the court determined Father's gross monthly income to be $3,922.40. Mother timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶8        We review the court's legal decision-making, parenting time, and child support orders for an abuse of discretion. *See DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019); *Woyton v. Ward*, 247 Ariz. 529, 534, ¶ 17 (App. 2019). A court abuses its discretion "when it commits legal error" or "when the record is devoid of competent evidence to support the court's decision." *Woyton*, 247 Ariz. at 531, ¶ 5 (citation and internal quotation marks omitted). We will not disturb the court's factual findings unless they are clearly erroneous. *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 6 (App. 2010). "A

finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Kocher v. Dep't of Revenue*, 206 Ariz. 480, 482, ¶ 9 (App. 2003). We review the interpretation of statutes de novo. *Woyton*, 247 Ariz. at 531, ¶ 5. We consider the evidence in a light most favorable to sustaining the court's rulings, *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283, ¶ 14 (App. 2019), given it was "in the best position to judge the credibility of witnesses and resolve conflicting evidence," *Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015).

## I.      Joint Legal Decision-Making Authority

**¶9**        Mother contends the court abused its discretion in awarding joint legal decision-making authority because she offered evidence illustrating Father committed significant domestic violence on February 17, 2020 pursuant to A.R.S. § 25-403.03(A).

**¶10**        When entering legal decision-making orders consistent with the child's best interests, the superior court must determine whether there has been domestic violence or child abuse. A.R.S. § 25-403(A)(8). If the court finds (1) "the existence of *significant* domestic violence pursuant to [A.R.S.] § 13-3601"or (2) "by a preponderance of the evidence that there has been a *significant history* of domestic violence," it cannot award joint legal decision-making authority to the offending parent. A.R.S. § 25-403.03(A) (emphasis added). The legislature did not define what constitutes "significant" domestic violence pursuant to A.R.S. § 13-3601 or a "significant history" of domestic violence. *See* A.R.S. §§ 25-401 ("Definitions") and -403.03; *DeLuna*, 247 Ariz. at 424, ¶ 15 n.6.

**¶11**        In concluding the domestic violence was not significant, the court here evaluated three factors: "(1) [t]he seriousness of the particular incident of domestic violence, (2) the frequency or pervasiveness of the domestic violence, [and] (3) [] the passage of time and its impact." We have regarded the court's evaluation of these factors as reasonable, though not required by A.R.S. § 25-403.03(A). *DeLuna*, 247 Ariz. at 424, ¶ 15 n.6. The superior court ultimately has "discretion to weigh the evidence and determine the degree of the domestic violence's 'significance' for the purpose of § 25-403.03(A)." *Id.* at ¶ 15.

**¶12**        Here, although Father engaged in domestic violence against Mother on February 17, 2020, the court concluded his behavior did not constitute significant domestic violence under A.R.S. § 25-403.03(A) in determining Father's eligibility for joint legal decision-making. Mother argues this was error because the court had previously found the incident

was significant in a temporary parenting time order. But temporary orders are subject to reassessment. Indeed, a temporary order "[d]oes not prejudice the rights of the parties or of any child that are to be adjudicated at the subsequent hearings in the proceeding." A.R.S. § 25-315(F)(1). And temporary orders "[t]erminate[] when the final decree is entered . . . ." A.R.S. § 25-315(F)(4). The court was not bound by its earlier description of the incident.

¶13        Moreover, the court found Father had not committed any act of domestic violence since the February 17, 2020 incident. Although Mother succeeded in renewing the protective order in March 2021, the court noted it was based on Father sending Mother a "happy birthday message." Mother asserts Father also violated the protective order by texting H.F. to wish Mother a happy birthday and, later, veteran's day. But the modified protective order removed H.F. as a protected person and did not prohibit messages to her. And though Mother testified Father verbally and physically abused her during the parties' marriage, she admitted she did not contact police or seek medical care for any purported injuries by Father. Given the court's findings, it did not determine such testimony was sufficiently credible to establish significant domestic violence. *See Lehn*, 246 Ariz. at 284, ¶ 20 (explaining we defer to the superior court's credibility determinations and the weight given to conflicting evidence). The record contains sufficient evidence to support these findings, and we will not disturb the court's ultimate finding of non-significant domestic violence.

¶14        When a parent seeking sole or joint legal decision-making has committed a non-significant act of domestic violence against the other parent, the court must presume that awarding legal decision-making authority to the offending parent is contrary to the child's best interests. A.R.S. § 25-403.03(A)–(B), (D). But the offending parent may rebut this presumption. A.R.S. § 25-403.03(E)(1)–(6) (enumerating factors the court must consider to determine if the offending party has rebutted the presumption).

¶15        Mother argues the rebuttal factors all weigh against Father, which is a request to reweigh the evidence on appeal. We decline her invitation to invade the superior court's role. *See Lehn*, 246 Ariz. at 284, ¶ 20. The record reflects the court's consideration of all the factors under subsection (E). And the record contains evidence supporting its findings. Thus, the court did not abuse its discretion in awarding Father joint legal decision-making authority.

## II.    Parenting Time – Counseling

¶16    Mother argues Arizona law prohibits the court from encouraging counseling between H.F., a purported victim, and Father, a perpetrator of domestic violence. Section 25-403.03(G) explicitly forbids the court from "order[ing] joint counseling between a victim and the perpetrator of domestic violence." Mother contends H.F. was a victim in the February 17, 2020 incident, given H.F.'s "proximity" to the altercation and its emotional aftermath.

¶17    As Mother concedes, the court here did not order, but rather encouraged, joint counseling between H.F. and Father. But even assuming Arizona law forbids a court from merely encouraging joint counseling, the record supports the court's finding that H.F. was not a victim of domestic violence in the February 17, 2020 incident—a fatal flaw in Mother's argument.

¶18    Though Mother testified at the May 2020 protective order hearing that H.F. was involved in the incident, police also interviewed H.F. away from Mother following the incident. H.F. stated she stayed in her bedroom as her parents argued, and while she attempted to come into the kitchen while her parents were arguing, they told her to go back to her room. H.F. denied seeing any physical interaction or touching between her parents, but rather only argument concerning Mother's new boyfriend. Police noted H.F. "did not appear to be distressed." Mother also admitted at the hearing that H.F. did not witness the gun display by Father. And while Mother initially obtained a protective order against Father based on this incident covering both herself and H.F., the court later removed H.F. as a protected person because Father never directly threatened H.F.

¶19    Substantial evidence supports the court's finding that Mother, not H.F., was the sole victim of Father's domestic violence. Therefore, the court did not abuse its discretion in encouraging joint counseling between H.F. and Father.

## III.    Child Support

¶20    Mother argues the court attributed Father, a professional driver, an incorrect gross monthly income of $3,922.40 because Father acknowledged at the dissolution trial that he earned a gross monthly income of $5,000 in 2020 and testified that figured remained just about the same in 2021. We will affirm the court's findings regarding Father's gross monthly income if they are supported by sufficient evidence and not clearly erroneous. *See Pearson v. Pearson*, 190 Ariz. 231, 234–35 (App. 1997).

¶21        As Mother notes, the court apparently adopted the $3,922.40 figure as Father's gross monthly income based on Mother's calculation in her pretrial statement. This was not an abuse of discretion. The court heard Father's testimony, purporting to earn a gross monthly income of $5,000 in 2020 and 2021. At the same time, Father's financial affidavits reported a gross monthly income of $3,000 for 2020 ($20.50/hour) and $2,422 for 2021 ($21.50/hour). When asked why Father reported a lower monthly income in 2021, despite earning more per week than in 2020, Father testified, "I must have done my numbers wrong." Moreover, Father's pay stubs in February and March 2020, as well as in May and June 2021, show Father earning anywhere from approximately $1,700 to $5,200 in gross monthly income. The court weighed all the evidence before it and ultimately adopted a figure within this range.

**CONCLUSION**

¶22        For the foregoing reasons, we affirm. After considering the financial resources of the parties and the reasonableness of Mother's positions on appeal, we decline Mother's request for an award of her reasonable attorneys' fees on appeal pursuant to A.R.S. § 25-324(A). We further decline Mother's request for an award of her costs because she has not prevailed in her appeal.

