NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ANNE HUEY, *Petitioner/Appellee,*

*v.*

BRYAN B. HUEY, *Respondent/Appellant.*

No. 1 CA-CV 20-0547 FC
FILED 7-26-2022

Appeal from the Superior Court in Maricopa County
No. FC2018-001203
The Honorable Justin Beresky, Judge

**AFFIRMED IN PART**

COUNSEL

Hallier & Lawrence PLC, Phoenix
By Angela K. Hallier, Jason David Brierley
*Co-Counsel for Petitioner/Appellee*

Jones Skelton & Hochuli PLC, Phoenix
By Eileen Dennis GilBride
*Co-Counsel for Petitioner/Appellee*

Jaburg & Wilk PC, Phoenix
By David P. Uffens
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Chief Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**F U R U Y A**, Judge:

¶1 Bryan Huey ("Father") appeals the decree of dissolution dissolving his marriage to Anne Huey ("Mother"). Father claims his due process rights were violated when the superior court denied his motion to continue trial until it could be held in-person. Father also challenges the court's orders concerning legal decision-making authority, parenting time, relocation, child support, spousal maintenance, division of property, and an award of attorneys' fees to Mother.

¶2 We resolve Father's challenge of the court's decree as to the limited issues of spousal maintenance and division of property (in part) in a separate opinion filed concurrently with this decision. As to all other matters raised by Father in his appeal, we affirm for the following reasons.

## FACTS AND PROCEDURAL HISTORY

¶3 Father and Mother married in 2006 and share two minor children (the "Children"). In March 2018, Mother petitioned for legal separation, later converted to a petition for dissolution in November 2018. Although Father requested an in-person trial, the court conducted a two-day virtual trial in May 2020. In June 2020, the court entered a decree of dissolution.

¶4 Father timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I. Due Process Claim

¶5 Father contends his due process rights were violated when the court denied his motion to continue the two-day virtual trial until it could be held in-person. He asserts that the virtual trial impaired "appropriate credibility finding[s]" by the court and left him with insufficient time to testify due to technological issues. We review the court's

denial of a motion to continue trial for an abuse of discretion, *Dykeman v. Ashton*, 8 Ariz. App. 327, 330 (1968) (citations omitted), but review de novo whether the court afforded Father due process, *Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207, ¶ 6 (App. 2016). Father must show prejudice sufficient to establish reversible error based on the record. *Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 50, ¶ 18 (App. 2013).

**¶6**          "The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness." *State v. Melendez*, 172 Ariz. 68, 71 (1992). Due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), as well as to offer evidence and question adverse witnesses, *Cruz v. Garcia*, 240 Ariz. 233, 236, ¶ 11 (App. 2016). However, due process is "flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334.

**¶7**          In March 2020, Arizona's Governor declared a statewide emergency in response to the COVID-19 outbreak. *See Candice B. v. Dep't of Child Safety*, 1 CA-JV 20-0207, 2021 WL 345396, at *3, ¶ 13 (Ariz. App. Feb. 2, 2021) (mem. decision). The Arizona Supreme Court then issued administrative orders suspending in-person proceedings in all Arizona courts "to the greatest extent possible consistent with core constitutional rights" and urging presiding superior court judges to limit "in-person courtroom contact as much as possible by using available technologies," including videoconferencing. *See id.* (citing Ariz. Super. Ct. Admin. Ord. 2020-47, *In the Matter of Authorizing Limitation of Court Operations During a Public Health Emergency* (Mar. 16, 2020) (updated by subsequent administrative orders, and currently A.O. 2022-34 (April 1, 2022))).

**¶8**          During April and May 2020 status conferences in this case, and again after Father moved to continue trial, the parties discussed the practicality of holding a virtual trial. Given the two years of litigation leading up to trial, and because trial had been continued twice in the past, Mother objected to any continuation. Based on the ongoing pandemic, Mother's counsel also expressed her inability to attend an in-person trial, given that she lived with a "high-risk person." Although the court expressed some technical and practical concerns about a virtual trial, it noted virtual trial was feasible and denied Father's motion to continue.

**¶9**          During the two-day virtual trial in May 2020, Father cross-examined Mother's witnesses, including Mother herself, called his own witnesses, testified on his behalf, admitted evidence, and was able to object to the admission of evidence. The court indicated that the online platform

(which included audio and video technology) provided sufficient visual access to the parties and witnesses for purposes of "judging credibility." The court was able to clearly view the faces of the parties, witnesses, and attorneys, and in its under-advisement ruling, the court expressed no difficulty judging witness credibility. At the end of trial, the court noted that despite a few minor technical issues, the parties were able to adequately present their case. Thus Father has not established that the virtual trial impeded the court's ability to make credibility determinations.

**¶10**       Regarding Father's claim of insufficient time to testify, he fails to articulate how additional time for his further redirect examination would have altered the court's rulings. *See Gamboa v. Metzler*, 223 Ariz. 399, 402–03, ¶¶ 12–18 (App. 2010) (concluding that time limitations imposed by the superior court did not merit reversal when the plaintiff failed to demonstrate how those limitations harmed his case). Moreover, Father did not request additional trial time. *See id.* at ¶ 16. On this record, Father has shown neither error, nor resulting prejudice.  Thus, his due process claim fails.

## II.      Legal Decision-Making Authority, Parenting Time, & Relocation

**¶11**       Father challenges the court's orders regarding legal decision-making, parenting time, and relocation on various grounds, all of which we review for an abuse of discretion. *See DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019) (legal decision-making, parenting time); *Murray v. Murray*, 239 Ariz. 174, 176, ¶ 5 (App. 2016) (relocation). A court abuses its discretion "when it commits legal error" or "when the record is devoid of competent evidence to support the court's decision." *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 5 (App. 2019) (quotations omitted). We will not disturb the court's factual findings unless they are clearly erroneous. *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 6 (App. 2010). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Kocher v. Dep't of Revenue*, 206 Ariz. 480, 482, ¶ 9 (App. 2003). We view the evidence in the light most favorable to sustaining the court's rulings, *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283, ¶ 14 (App. 2019), given it "is in the best position to judge the credibility of witnesses and resolve conflicting evidence," *Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015).

**¶12**       Father argues the court abused its discretion in awarding Mother sole legal decision-making authority without first determining if Father was an unfit parent. But Father fails to cite any authority requiring the court to find a parent "unfit" before it can award sole legal decision-making authority to the other parent, and we are unaware of any. In any

4

event, the court examined the factors enumerated in A.R.S. §§ 25-403(A)(1)–(11), -403.01, and -403.03–.05 in resolving the legal decision-making issue. This was sufficient, and we decline to impose an additional prerequisite not found in statute.

¶13 The balance of Father's argument regarding legal decision-making takes issue with the court's reliance on Mother's evidence. However, we do not reweigh evidence on appeal. *See Lehn*, 246 Ariz. at 284, ¶ 20. Moreover, the record reflects the court's detailed examination of the factors that Father acknowledges were based upon evidence received at trial, though construed in Mother's favor.

¶14 Father next argues the court abused its discretion in awarding Father less parenting time "than either party requested." However, the court is not bound by parties' parenting time requests but must adopt a parenting time plan consistent with a child's best interests. *See* A.R.S. § 25-403.02(B).

¶15 Here, the court acknowledged that while Mother was awarded sole legal decision-making, Father remained entitled to reasonable parenting time, and it adopted a plan that would maximize his parenting time with the Children after their relocation to Iowa. *See* A.R.S. § 25-403.01(D). Subject to certain necessary preconditions, the court determined that Father was entitled to one additional weekend of parenting time in Iowa, as well as parenting time with the Children in Arizona for their Thanksgiving break, winter break—the first half in odd years, the second half in even years—spring break, and for two non-consecutive weeks during summer break. The court's parenting-time plan is supported by findings based on the record, consistent with the best interests of the Children, and Father has shown no abuse of discretion.

¶16 Father further argues the court failed to properly weigh the evidence in granting Mother's request to relocate the Children to Iowa. Again, we will not reweigh evidence on appeal. *See Lehn*, 246 Ariz. at 284, ¶ 20. The court considered the relevant statutory relocation factors under A.R.S. § 25-408(I), including the best-interests factors under A.R.S. § 25-403. *See Hurd v. Hurd*, 223 Ariz. 48, 52–53, ¶¶ 20–26 (App. 2009). Specifically, the court found Mother would have a substantial support system in Iowa she did not otherwise have in Arizona, including an extensive network of family members and friends who lived in Iowa and could offer support for the parties' autistic child. The cost of living in Iowa would be less than if Mother remained in Arizona. And Father would have, under Mother's proposal, more parenting time on a long-distance basis than he had

experienced in the two years leading up to trial—having only seen the Children in a supervised setting for two hours a week up until January 2020, when parenting time increased to three hours per week. In sum, the court found relocation to Iowa would improve Mother's and the Children's quality of life and have a positive impact on the Children's emotional, psychological, and developmental needs. These findings are supported by the record, and the court did not abuse its discretion in making its relocation determination.

¶17        Father also challenges the court's allocation of the majority of travel expenses related to relocation to him, despite the parties' agreement to split costs evenly. We review the allocation of travel expenses for an abuse of discretion. *See Cook v. Losnegard*, 228 Ariz. 202, 204, ¶¶ 8–9 (App. 2011). Absent evidence the court exceeded bounds of reason, we cannot substitute our discretion for that of the trial judge. *Id.* at 205, ¶ 11 (citing *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571 (1985)). Further, the parties' stipulation on any given matter is not binding upon the court until it approves such an agreement. Ariz. R. Fam. Law P. 69(b).

¶18        Although the parties apparently agreed in principle to evenly divide costs, the court ultimately ordered Father to pay for costs associated with any parenting time he chose to exercise in Iowa. Father is also required to pay seventy-five percent of the airline costs necessary to fly the Children and Mother to Arizona for Father's parenting time with Children—until their daughter turns fourteen, when she can fly accompanied only by her brother. If Mother thereafter chooses to fly with the Children, Mother must pay for her own airline ticket.

¶19        In allocating travel expenses, the Arizona Child Support Guidelines require the court to "consider the means of the parents." A.R.S. § 25-320 app. § 18 (2018) (the "Guidelines"). The court received evidence demonstrating vast disparity in the parties' gross monthly income and that Mother was incapable of working. Based upon the evidence presented, the court reasonably could have concluded that Father should bear responsibility for most travel expenses. *See Cook*, 228 Ariz. at 205, ¶ 11. Thus, Father has shown no abuse of discretion in the court's allocation of the majority of travel expenses to him.

## III.    Child Support Worksheet

¶20        Citing the Guidelines § 5(A), Father argues the court erred when it increased his child support obligation by attributing to him an incorrect gross monthly income figure on the child support worksheet.

Specifically, Father asserts the bonuses he had earned in previous years were improperly used to increase his gross monthly income, despite evidence such bonuses were not guaranteed or even expected in 2020.

**¶21** We interpret the Guidelines de novo, *Nia v. Nia*, 242 Ariz. 419, 422, ¶ 7 (App. 2017), but will affirm the court's findings regarding Father's income if they are supported by sufficient evidence and not clearly erroneous, *see Pearson v. Pearson*, 190 Ariz. 231, 235 (App. 1997).

**¶22** Under the Guidelines, gross income includes income from any source, including commissions or bonuses, though "[i]ncome from any source which is not continuing or recurring in nature *need not necessarily* be deemed gross income for child support purposes." Guidelines § 5(A) (emphasis added).

**¶23** Here, Father listed a gross monthly income of $12,001 in his financial affidavit filed a week before trial, which was admitted into evidence. But the court found Father's gross monthly income exceeded $16,000 per month in 2019, which is consistent with Father's financial affidavit, reflecting a gross income of $195,797 in 2019. The court further found Father was on track to exceed that monthly average, given his April 2020 paystub showing year-to-date earnings of $111,623. In view of such evidence, the court did not abuse its discretion in attributing Father approximately $16,800 in gross monthly income and requiring him to pay Mother $1,590 in monthly child support.

**¶24** Father also argues the court abused its discretion by listing a contradictory amount of parenting time days on the child support worksheet (30 days) compared to the dissolution decree (85 days). The record reflects otherwise. The decree awarded Father twenty-four days of parenting time (one weekend per month) until therapeutic intervention services or supervision were no longer necessary. But ultimately, the court credited Father with thirty days of parenting time for purposes of calculating child support and acknowledged that this number could change. Father has shown no abuse of discretion given the state of his parenting-time. *See Cummings v. Cummings*, 182 Ariz. 383, 385 (App. 1994) (reviewing child support awards for an abuse of discretion).

## IV. Division of Property – Fidelity Account

**¶25** As part of its decree, the court determined that an investment account maintained with Fidelity was community property subject to division. The Fidelity investment account was initially Father's sole and separate property. But after marriage, this account received deposits of

community assets and was used to pay for community obligations and acquisitions. Father argues, however, that the court abused its discretion in finding the account to be "irreversibly commingled." Father maintains his expert's report and testimony traced what funds belonged to the community and what funds were his sole and separate property. We review the court's orders concerning division of property for an abuse of discretion but review the court's characterization of property de novo. *Helland v. Helland*, 236 Ariz. 197, 199, ¶ 8 (App. 2014).

**¶26** The character of property as separate or community is generally fixed at the time of acquisition; however, separate property may be transformed into community property when there is commingling to such an extent that "the identity of the property as separate or community is lost." *Potthoff v. Potthoff*, 128 Ariz. 557, 562 (App. 1981). Thus, when "community property and separate property are commingled, the entire fund is presumed to be community property unless the separate property can be explicitly traced." *Cooper v. Cooper*, 130 Ariz. 257, 259 (1981) (citations omitted). The burden lies with the party "claiming that the commingled funds, or any portion of them, are separate to prove that fact and the amount by clear and satisfactory evidence." *Id.* at 259–260 (citations omitted).

**¶27** Here, the court received conflicting evidence from the parties on the issue of whether the post-marriage transactions could be sufficiently traced. Mother's expert testified the volume of activity over an approximately thirteen-year marriage rendered it impossible to distinguish what were separate versus community funds. Father's expert testified to the contrary. The court resolved this issue against Father, finding that tracing was not possible. Father's position would require us to reweigh the conflicting testimony and reports offered by the parties' financial experts, which we will not do. *See Lehn*, 246 Ariz. at 284, ¶ 20; *Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 359, ¶ 24 (App. 2014) (explaining that the weight given to expert testimony is within the sole province of the fact finder). Thus, we affirm the court's decision as to the Fidelity investment account.

## V. Attorneys' Fees Award

**¶28** Father challenges the court's partial award of attorneys' fees to Mother under A.R.S. § 25-324(A), which we review for an abuse of discretion. *See Democratic Party of Pima Cnty. v. Ford*, 228 Ariz. 545, 547, ¶ 6 (App. 2012).

¶29 Section 25-324(A) requires the court to consider "the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings" in determining whether to award a party attorneys' fees. Here, the court found that Father had "considerably more resources" than Mother, the instant matter "was over litigated by both sides," and Father had made an unreasonable "eleventh hour" assertion that Mother suffered from Munchausen syndrome, which required a continuation of the trial date and caused Mother to incur significant additional fees. In view of its findings, the court awarded Mother approximately half of her requested attorneys' fees. Since the record supports the court's findings, Father has shown no abuse of discretion in making this award.

## CONCLUSION

¶30 The superior court did not violate Father's due process rights. Further, those portions of the parties' dissolution decree that concern legal decision-making authority, parenting time, relocation, child support, the Fidelity investment account, and the award of attorneys' fees to Mother are affirmed. As noted, we decide the issues raised by Father regarding spousal maintenance and remaining property division issues by separate opinion filed concurrently with this decision.

¶31 On appeal, both parties request an award of their respective attorneys' fees under A.R.S. § 25-324, as well as taxable costs on appeal. In our discretion, we award Mother her reasonable attorneys' fees on appeal pursuant to A.R.S. § 25-324(A), given the disparity of the parties' financial resources and the positions they have taken on appeal. We additionally award Mother her taxable costs. Mother's award of fees and costs shall be contingent upon her compliance with ARCAP 21.

