NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ROBERT J. NICAISE, JR., *Petitioner/Appellee*,

*v.*

APARNA SUNDARAM, *Respondent/Appellant*.

No. 1 CA-CV 21-0319 FC
FILED 6-27-2023

Appeal from the Superior Court in Maricopa County
No. FC2014-094949, FC2014-095056
The Honorable Lisa Ann VandenBerg, Judge

**AFFIRMED**

COUNSEL

Robert J. Nicaise Jr., Tempe
*Petitioner/Appellee*

Taylor Young Appeals PLLC, Phoenix
By Taylor C. Young
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Angela K. Paton and Judge D. Steven Williams joined.

---

**P E R K I N S**, Judge:

**¶1** Aparna Sundaram ("Mother") appeals the superior court's legal decision-making and parenting time order. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** A full factual history of this case is set forth in this court's earlier opinion, *Nicaise v. Sundaram*, 244 Ariz. 272, 275–77, ¶¶ 3–14 (App. 2018). Mother and Robert Nicaise ("Father") have one daughter ("Child") born in 2010. The parties have battled over legal decision-making, parenting time, and child support since 2014.

**¶3** The superior court first ruled on legal decision-making and parenting time with its "2016 Order." In 2016, the court granted Mother and Father joint legal decision-making authority and Father received final legal decision-making authority on medical, mental health, dental, and therapy issues due to Mother's repeated failure to comply with Child's court-ordered therapies and education plans. The court required the parents to enroll Child at a public school in Mother's residential zone that could provide an individualized education plan. The court also required Child receive specific medical, dental, and mental health treatments.

**¶4** Mother appealed the 2016 Order and in March 2018 this court vacated the provisions requiring a specific school and specific treatments. *Id.* at 282, ¶ 35. This court also stated that final decision-making authority is tantamount to sole legal decision-making authority and determined Father has sole legal decision-making authority on all issues the superior court granted him final say. *Id.* 278, ¶ 18. Mother sought review from the Arizona Supreme Court which, in part, vacated this court's ruling. *Nicaise v. Sundaram*, 245 Ariz. 566, 569, ¶ 17 (2019). The Arizona Supreme Court ruled there is a difference between final say and sole legal decision-making and restored Father's authority to have final say on medical, mental health, dental, and therapy matters. *Id.* at 568–69,

¶¶ 14–15. Ultimately, the only change to the 2016 Order from the appellate process was that the superior court could not order that Child attend a specific school and receive specific treatments.

¶5 In August 2019, Father filed a motion requesting that Child be re-enrolled in a school she previously attended. The superior court granted Father temporary sole legal decision-making authority on education to enroll Child in that school. After the term of Father's sole decision-making on education expired, the parents reverted to shared joint authority on education. Father was unable to re-enroll Child in the school because Mother moved residences and Child no longer had a parent residing in the school's residential zone. The court extended Father's temporary educational authority to allow him to enroll Child at a school in the Mesa public school district.

¶6 Father also petitioned to modify legal decision-making, parenting time, and child support. In his pro per petition, he requested sole legal decision-making authority. But later, while represented by counsel, Father clarified in a pre-trial statement that he only sought final decision-making authority on medical and educational issues and joint authority on all other issues. Father's concern was that Child needed certain therapies the court had previously ordered, and Mother would not allow Child to participate in those therapies. Although this court vacated the portion of the order requiring the therapies and individualized education plan, Father still had final say on these issues, and Mother refused to comply with Father's determinations.

¶7 In January 2020, Mother responded to Father's petition with a cross-petition to modify legal decision-making, parenting time, and child support. In her cross-petition, Mother alleged that police arrested Father in February 2019 for driving under the influence ("DUI") of alcohol, and that Father was convicted of the same in October 2019. Mother also claimed that Father's previous loss of his medical license and failure to obtain care for his mental health conditions support her having sole decision-making authority. Mother requested sole legal decision-making authority and that Father's parenting time be limited to every other weekend.

¶8 The court held an evidentiary hearing in January 2021. At the hearing, Father expressed his wish that Child receive the therapies and individualized education plan. Father requested a parenting time schedule that would allow him to transport Child to all therapies due to Mother's refusal to do so. Father also asked the court to extend his final

say to education, in addition to medical, dental, and mental health issues, so Child could participate in various therapies and individualized education plans. Beyond that, he asked the court for joint legal decision-making authority.

**¶9** Mother admitted that she did not believe Child required the therapies Father desired. Mother also contended that she should have sole legal decision-making authority. She pointed to Father's DUI conviction, his alleged mental health challenges, and concerns about Child's health and eating habits while in Father's care. During the hearing, Father admitted he spent 21 hours in jail for the DUI conviction.

**¶10** Two months later, the court issued its "2021 Ruling." The court concluded that Mother refused to take Child to the therapies without any professional opinion regarding why they were unnecessary. The court did not find Mother's testimony regarding Child's health when with Father persuasive because Mother provided no documentation to support her allegations. The court also concluded that Mother "has not done the right thing" with respect to facilitating Child's medical, dental, and therapeutic treatment. Based on these findings, the court awarded sole legal decision-making authority to Father. The court also designated Father as Child's "primary residential parent" and limited Mother's parenting time to weekends. Due to Father's DUI conviction, the court ordered him to refrain from operating a motor vehicle with Child until his driving privileges are reinstated.

**¶11** Regarding Father's DUI conviction, the court noted that Father had "satisfied the consequences attached to his DUI conviction," "[the] conviction should not disrupt Father's ability to participate in legal decision-making," but that the DUI conviction and failure to comply with court ordered drug testing is "troublesome."

**¶12** Mother appealed. We have jurisdiction. A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶13** Mother argues the superior court erred by failing to properly apply the statutory presumption against awarding legal decision-making authority to a parent with a recent DUI conviction, failing to follow the rulings set forth by this court and our supreme court, and altering parenting time without any testimony regarding Child's best interests. We review parenting time and legal decision-making orders for an abuse of discretion. *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013).

4

## I.       Statutory Presumption

**¶14**       If the superior court finds that a parent has been convicted of a DUI offense within 12 months prior to filing a petition to modify legal decision-making, "there is a rebuttable presumption that sole or joint legal decision-making by that parent is not in the child's best interests." A.R.S. § 25-403.04(A). The court must make "[f]indings of fact that support its determination that the parent abused drugs or alcohol or was convicted of the offense," and "[f]indings that the legal decision-making or parenting time arrangement ordered by the court appropriately protects the child." A.R.S. § 25-403.04(A)(1)–(2). To determine whether the parent rebuts the presumption against legal decision-making, the court must consider evidence of (1) "[t]he absence of any conviction of any other drug offense during the previous five years," (2) "[r]esults of random drug testing for a six month period that indicate that the person is not using drugs as proscribed by title 13, chapter 34," and (3) "[r]esults of alcohol or drug screening provided by a facility approved by the department of health services." A.R.S. § 25-403.04(B). Contrary to Mother's assertion on appeal, we have never held that the superior court must make explicit findings regarding the evidence it considers under Section 25-403.04(B). Given that the legislature set forth the explicit findings required under this statute separately from the "evidence" that the court must "consider," we will not read additional required findings into the statute.

**¶15**       The superior court here sufficiently articulated the statutorily required findings and considered the necessary evidence. The court found Father committed a DUI offense under Section 28-1381(A)(1) in February 2019. The court also found no "evidence that Father isn't able to safely exercise parenting time," which addresses whether the "arrangement ordered by the court appropriately protects the child." A.R.S. § 25-403.04(A)(2). And the record contains testimony and other evidence the court needed to consider under Section 25-403.04(B). Father testified that he had never had another DUI violation at any point in his life. The court acknowledged Father had not complied with court-ordered drug testing and affirmed the previous testing order. We will not re-weigh this evidence on appeal. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). The superior court did not abuse its discretion by awarding Father sole legal decision-making authority despite his DUI conviction.

## II. Failure to Follow Rulings of the Court of Appeals and Arizona Supreme Court

¶16      Mother argues that the superior court failed to follow the rulings of this court and the Arizona Supreme Court by continuing to enforce vacated provisions of the 2016 Order. Specifically, Mother contends the court improperly considered Mother's violations of the 2016 Order to find her uncooperative and relied on the misunderstanding that Father had sole legal decision-making authority.

¶17      The court did consider Mother's lack of cooperation throughout the proceedings when making its 2021 ruling. But considering Mother's lack of cooperation with previous rulings does not give effect to the now-vacated portions of the 2016 Ruling. Because Mother's refusal to provide Child with therapies runs counter to Father's wishes, who had final say, Mother still frustrated the goals and purpose of the superior court's rulings.

¶18      Mother also argues the superior court erred by erroneously believing Father had sole legal decision-making authority. Specifically, Mother points out that the court noted in the 2021 Ruling, "[w]hile Father's neglect to discuss appointments for the Child is problematic, he does have sole legal decision-making outside of educational matters."

¶19      It is true that at the time of the 2021 Ruling, Father had *final* rather than sole legal decision-making authority on certain issues. But the court later reasoned that Father should have sole legal decision-making authority on all issues because Mother's ability to make decisions for Child "diminished." The court went on to determine "Mother's denial of treatment and therapies . . . is not in [Child's] best interest." The court's conclusion that Father should have sole legal decision-making authority was based on its decision on Mother's denial of treatment and therapies for Child. The court's decision was not tethered to its understanding of Father's current decision-making authority. Even if the court erroneously thought Father had sole legal decision-making authority on some matters, the court would likely still have granted Father sole legal decision-making authority here to ensure Child receives the recommended treatments and therapies.

## III. Due Process

¶20      Mother claims the court denied her due process because Father did not request sole legal decision-making authority and the court never said it was considering awarding sole legal decision-making

6

authority to Father or cutting Mother's parenting time. Due process requires notice and opportunity to be heard at a meaningful time and in a meaningful manner for legal decision-making and parenting time rulings. *Cruz v. Garcia*, 240 Ariz. 233, 236, ¶ 11 (App. 2016). A denial of due process exists when the superior court issues a ruling altering a parental right that was entirely off the table before the ruling. *Id.* at 237, ¶¶ 14–15. For example, in *Cruz*, no party requested a change in legal decision-making but the court granted one party sole legal decision-making authority. *Id.* at 236, 237, ¶¶ 9, 15.

¶21 Here, both parties knew that legal decision-making and parenting time were at issue. Father requested final say as to educational issues to enroll Child in a school that would fit her educational needs. Father also requested an altered parenting time schedule so he could ensure Child has transportation to various therapies. Both parties presented evidence and testified at a hearing as to how the court should rule on legal decision-making and parenting time. Mother's due process claim lacks merit.

## IV.    Insufficiency of Evidence

¶22 Lastly, Mother argues the evidence does not support the superior court's findings about her mental health or the decision to grant Father sole legal decision-making authority and status as primary residential parent. When considering a petition to modify legal decision-making and parenting time, the superior court must first ascertain whether there has been a change in circumstances materially affecting the welfare of the child. *Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020) (quotation omitted). The court then determines if the modification is in the best interests of the child. *Id.* (quotation omitted). To determine the best interests of the child, the court must consider all factors under Section 25-403(A). As previously stated, we review orders regarding legal decision-making and parenting time for an abuse of discretion. *Nold*, 232 Ariz. at 273, ¶ 11. An abuse of discretion exists when there is no competent evidence in the record to support the decision. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009).

¶23 Here, the superior court did not expressly find a change of circumstances in the 2021 Ruling. And the modification statute does not require express, written findings about changed circumstances. *See* A.R.S. § 25-411(J). The superior court impliedly found changed circumstances: first the court identified the need for a change in circumstances as a predicate for changing legal decision-making, and then it changed legal

decision-making. *See Gen. Elec. Cap. Corp. v. Osterkamp*, 172 Ariz. 191, 193 (App. 1992) ("Implied in every judgment, in addition to the express findings made by the court, are any additional findings necessary to sustain the judgment, if reasonably supported by the evidence and not in conflict with the express findings."); *see also Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 17 (App. 2004) ("If the juvenile court fails to expressly make a necessary finding, we may examine the record to determine whether the facts support that implicit finding."). After the 2016 Ruling, Mother had refused to take Child to the therapies Father arranged, moved residences (causing Child's removal from the school Father preferred), and Father committed a DUI. These are sufficient changes to support a re-evaluation of the legal decision-making allocation.

¶24        To reach a decision in the 2021 Ruling, the court concluded that Mother had "delayed, frustrated, hindered, or absolutely refused to abide by" court orders in the past and had now done so for Child's school choice and education. The court also found Mother's testimony as to Child's health when in Father's care unreliable and unpersuasive. Mother would not allow Child to participate in therapies Father desired. The record supports the superior court's conclusion that granting Father sole legal decision-making authority and primary residential parent status is in Child's best interests.

¶25        Mother also specifically argues that the superior court incorrectly concluded that her mental state prohibited her from parenting effectively. The superior court described Mother's ability to make decisions in Child's best interest as "diminished" when discussing Mother's mental health. But the court based that conclusion on Mother's unwillingness to allow Child to participate in therapies Father believes Child needs. In essence, Mother asks us to reweigh the evidence that led to the superior court's conclusion she was not fit to make decisions for Child. We do not reweigh this evidence on appeal. *See Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015) ("[T]he family court is in the best position to judge the credibility of witnesses and resolve conflicting evidence, and appellate courts generally defer to the findings of the family court."). The superior court did not abuse its discretion in awarding Father sole legal decision-making authority and status as primary residential parent.

## V.    Attorneys' Fees

¶26        Both parties request attorneys' fees under Section 25-324. After considering the parties' financial resources and the reasonableness

of their positions throughout these proceedings, we decline to award fees on appeal. *See* A.R.S. § 25-324(A). As the successful party on appeal, Father is entitled to an award of taxable costs upon compliance with ARCAP 21.

**CONCLUSION**

¶27      We affirm.

